**In re BREINIG.**

No. 21490.

District Court, E. D. Pennsylvania.

July 25, 1941.

J. Jerome Sklar and Hirschwald, Goff & Rubin, all of Philadelphia, Pa., for trustee.

A. Archer Cross, of Cross & Quinlan, of Philadelphia, Pa., for respondent.

John M. Hill, of Philadelphia, Pa., referee in bankruptcy.

Norman Klauder, trustee in bankruptcy.

KALODNER, District Judge.

On September 23, 1940, Alfred Oliver Breinig, trading as Business Supply Company, filed a petition for Arrangement and Composition under Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Louis Fow, Esq., a member of the Philadelphia Bar, represented the debtor in the filing of the petition.

The debtor continued in possession (under Section 342 of the Act, 11 U.S.C.A. §

742) until October 1, 1940, when the court appointed receivers with leave to operate.

On October 24, 1940, the debtor was adjudicated a bankrupt, and on the same date a trustee was elected by the creditors, who was thereafter duly qualified.

It appears that the debtor was engaged in the business of furnishing furniture and equipment, etc. On May 1, 1940, almost five months prior to the filing of the Arrangement petition, the debtor company entered into a contract with the Commissioners of Philadelphia County to supply certain furniture and equipment to the new Municipal Court Building in the City of Philadelphia for the sum of $40,192.22.

The debtor as contractor had numerous sub-contracts with various sub-contractors for the fabrication of the furniture. On the day that the petition was filed the debtor had already made partial delivery of the furniture in the amount of $850.

The contract between the bankrupt and the County Commissioners provided in Section 24[1] that the Commissioners had a right to stop work or terminate the contract in the event that the contractor was adjudged a bankrupt or made an assignment for the benefit of creditors, etc.

Section 26 of the contract also provided as follows:

"26. Owner's right to withhold payments.

"The owner may withhold from the contractor such an amount or amounts as may be necessary to adjust claims for labor and services rendered and materials furnished in and about the work. The owner shall have the right, acting as agent for the contractor, to apply such retained amounts to the payment of such just claims."

Prior to, and subsequent to, the filing of the debtor's petition on September 23, 1940, the debtor was in receipt of notice from the County Commissioners of their intention to stop the work then in progress and to terminate the contract pursuant to the provisions of Section 24 of the contract.

As a result of the notice of the County Commissioners, Fow, as counsel for the debtor, filed a petition with the referee on September 25, 1940, for leave to complete the executory contract aforementioned. The petition was granted and an order made on September 25, 1940, granting leave to the debtor to continue the business and to complete the contract with the County Commissioners.

Thereafter the contract was completed and all claims thereunder were paid. A balance of $2,905.30 remained in the hands of the County Commissioners, belonging to the bankrupt estate, which the Commissioners arranged with the trustee to turn over to him.

Before payment took place, Fow on February 13, 1941, forwarded a statement to the County Commissioners wherein he claimed the sum of $1,500 out of the funds in their hands as compensation for legal services rendered from September 21, 1940, to September 25, 1940, inclusive, in connection with the September 25, 1940, proceeding for leave to the debtor to complete the contract.[2]

As a result of Fow's demand, the Coun-

---

[1] 24. Owner's Right to Stop Work or Terminate Contract.

"If (a) Contractor shall be adjudged a bankrupt or make an assignment for the benefit of creditors or (b) a receiver or liquidator shall be appointed for the Contractor, or any of his property and shall not be dismissed within 20 days after such appointment, or the proceedings in connection therewith, shall not be stayed or appealed within the said 20 days after such appointment .... then and in such event, the owner, without prejudice to any other rights or remedy it may have, may by (10) ten days notice to the Contractor, terminate the employment of the Contractor and his right to proceed, either as to the entire work or (at the option of the owner) as to any portion thereof as to which delay shall have occurred, and may take possession of the work and complete the work by contract or otherwise, as the owner may deem expedient."

[2] "September 25, 1940
Business Supply Company, Contractor,
47 N. 17th St.,
Philadelphia, Pa.
    to   Louis Fow,   Dr.

In re: Contract #35, dated May 1, 1940, in the amount of $40,194.22, between Business Supply Company, contractor, and Commissioners of Philadelphia County, owner, for furnishing wood and medical furniture to new Municipal Court Building.
9/21/40 to 9/25/40
To legal services rendered in procuring leave that the contractor complete the above mentioned executory contract.
                 $1500.00
             Rec'd Payment"

ty Commissioners refused to pay over the $2,905.30 balance to the trustee in bankruptcy until Fow's claim was disposed of.

On February 21, 1941, the trustee in bankruptcy filed a petition praying for a rule on Fow to show cause why he should not withdraw his demand for compensation from the County Commissioners. The rule was granted by the referee in bankruptcy to whom the matter was referred when the petition for Arrangement was filed.

On February 24, 1941, prior to filing his answer to the trustee's petition, Fow instituted suit in the State court against the County Commissioners to recover the sum of $1,500 for services rendered in accordance with his demand.

On February 27, 1941, Fow filed an answer to the trustee's petition of February 21, disclaiming jurisdiction of the referee in the premises.

On April 12, 1941, the referee in bankruptcy made an order enjoining Fow "from further proceedings against the County Commissioners of Philadelphia County in any matter arising out of the instant bankrupt estate, without prejudice, however, to his right to seek compensation in the bankruptcy court for any services rendered in the instant matter."

Upon entry of this order, Fow filed the certificate for review now under consideration.

Briefly stated, the issue presented both to the bankruptcy referee and to this court is:

Has the bankruptcy court exclusive jurisdiction to determine the amount of compensation, if any, due to Fow?

Pointing out that Fow's alleged services were rendered from September 21, 1940, to September 25, 1940, inclusive, at a time when the bankrupt company was insolvent and contemplating bankruptcy, the referee found that the bankruptcy court has exclusive and summary jurisdiction to determine the amount of compensation paid either before or subsequent to the bankruptcy in a matter similar to the one at issue.

██ I am in accord with the referee's finding that the bankruptcy court has exclusive jurisdiction over the entire subject matter involved in the dispute as to Fow's fee.

Fow's claim for services, it must be kept in mind, was for the period extending from September 21, 1940, to September 25, 1940, inclusive. The petition for the arrangement was filed on September 23, 1940. Since September 22, 1940, came on a Sunday, that means that Fow's claim is for one day's legal service prior to the filing of the petition for the Arrangement, and for three days during which the debtor was in possession following the filing of the petition for the Arrangement (the debtor continuing in possession until October 1, 1940).

Thus, Fow's claim has two phases: (1) Services rendered prior to the filing of the petition for Arrangement and (2) services to the debtor subsequent to the filing of the petition for Arrangement.

As to the first phase—the services rendered on September 21 prior to the filing of the petition for the Arrangement, which consisted of a conference with the representatives of the County Commissioners anent the contract:

Clearly the bankruptcy court has jurisdiction over this phase of Fow's claim. Assuming that Fow had actually been paid by the debtor for his services on September 21, prior to the filing of the petition for the Arrangement, the bankruptcy court would have had jurisdiction as to such payment.

Section 60, sub. d, of the Chandler Act, 11 U.S.C.A. § 96, sub. d provides: "d. If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

In Conrad, Rubin & Lesser v. Pender, Trustee in Bankruptcy, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327, the Supreme Court of the United States ruled that payments made by the debtor in contemplation of bankruptcy to an attorney for services to be rendered are subject to summary re-examination by the referee as to reasonableness, under Section 60, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. d.

Section 60, sub. d, of the amended Bankruptcy Act (the Chandler Act) is the same as Section 60, sub. d, under discussion in the Supreme Court's decision in the Conrad case. The Conrad decision is, then, dispositive of the first phase of Fow's claim—the more so in view of the fact that in the Conrad case the money had actually been paid to the attorney, while in the instant case payment had not yet been made. In the instant proceeding Fow's conference on September 21 with the representatives of the County Commissioners was in contemplation of the filing of the petition for Arrangement, and followed a meeting with creditors on September 19. The debtor was then admittedly insolvent.

See also New York Credit Men's Association v. Chaityn, D.C., 29 F.Supp. 652, wherein it was held that where an attorney received a payment for legal services on January 11, 1939, and there was a petition for Arrangement under the Bankruptcy Act filed on January 16, 1939, that the payment made to the attorney could be recovered by the bankruptcy trustee in summary judgment as a "voidable preference".

In Re Buchanan et al., 2 Cir., 66 F.2d 416, 418, it was held that the bankruptcy court had summary jurisdiction to re-examine attorneys' fee paid in contemplation of bankruptcy, irrespective of the nature of the attorneys' services under Section 60, sub. d. In that case the attorney had raised the question that the services for which he had been paid were not "germane to bankruptcy". The following quotation from the opinion in the Buchanan case is especially pertinent (66 F.2d pages 418, 419):

"* * * But though section 60d provides for re-examination of payments to an attorney 'for services to be rendered,' we said in Re Falk, [2 Cir.], 30 F.(2d) 607, at page 609, that 'it can make no difference whether the transfer was made at or after the professional engagement was entered into,' and added that it is 'quite immaterial * * * whether the payment was made at the beginning of the service or later, providing bankruptcy was in contemplation during the time when all the services compensated for were rendered, and the payment was for services which were to be rendered when the professional engagement was entered upon.' Pratt v. Bothe [6 Cir.], 130 F. 670; In re Klein-Moffett Co. (D.C.), 27 F.2d 444; In re

Cummins (D.C.), 196 F. 224. The words, 'for services to be rendered,' in section 60d have in practice been construed as covering all services 'to be rendered' in contemplation of the filing of a petition in bankruptcy and not as including only services 'to be rendered' after the payment or transfer sought to be re-examined has been made.

"Appellants' third contention is that re-examination of their fee under section 60d deprives them of trial by jury, a right guaranteed by Amendment 7 of the Federal Constitution. But, in Matter of Wood & Henderson, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046, it is specifically held that section 60d does not violate Amendment 7, and that a re-examination of an attorney's fee paid in contemplation of bankruptcy may be properly had in a summary proceeding."

See also In re Debbins, D.C., 53 F.2d 1018. In that case it was held that courts, both under general authority over attorneys' conduct and under bankruptcy statutes, have jurisdiction to deal summarily with proceeding by bankruptcy trustee alleging that attorneys improperly received certain fees. Said the court (53 F.2d page 1020):

"It is, however, unnecessary to determine whether section 60d of the Bankruptcy Act is applicable to the facts in the present case, as, in any event, it is entirely clear that this court, in the exercise of its general authority over the professional conduct of its attorneys, as officers of the court, towards their clients, has jurisdiction to deal summarily with the situation here presented. In re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580; Jeffries v. Laurie (C.C.), 23 F. 786; In re Badger [2 Cir.], 9 F.2d 560; Lynde v. Lynde, 64 N.J.Eq. 736, 52 A. 694, 58 L.R.A. 471, 97 Am.St.Rep. 692; People ex rel. Karlin v. Culkin, 248 N.Y. 465, 162 N.E. 487, 60 A.L.R. 851.

"If these attorneys have, by the transaction already described, taken from the bankrupt and his estate, in the guise of reasonable attorneys' fees, an amount in excess of the fair value of any services rendered by them therefor, I have no doubt that such conduct is a proper subject for examination and correction by this court in this summary proceeding."

In the Debbins case the court specifically fixed the "fair and reasonable value" of the attorneys at $100 each, in place of the $600

fee which each had received, and ordered them to refund the difference to the trustee in bankruptcy.

The cases cited, as well as Section 96, sub. d, conclusively sustain the referee's ruling that the bankruptcy court has exclusive and summary jurisdiction with reference to Fow's claim for services which he rendered on September 21—the one business day preceding the filing of the Arrangement petition. Incidentally, Fow's own testimony before the referee disclosed that on September 19, 1940, following the meeting of creditors, the "necessity" arose for the filing of the Arrangement petition and, further, that the debtor was insolvent at the time.

Certainly, if the bankruptcy court has jurisdiction over an amount paid under the circumstances in the decisions cited, it has jurisdiction as to a claim for attorney's fee where payment has not been made.

Now, as to the second phase of Fow's claim—for services rendered from September 23, 1940, the date of the filing of the petition for Arrangement, to September 25, 1940, a three-day period:

The amended Bankruptcy Act literally abounds with provisions giving to the bankruptcy court sole jurisdiction over such claim.

To begin with, the petition for Arrangement was filed under Section 322 of the amended Bankruptcy Act, 11 U.S.C.A. § 722, which provides:

"§ 722. Same; original petition

"If no bankruptcy proceeding is pending, a debtor may file an original petition under this chapter with the court which would have jurisdiction of a petition for his adjudication. July 1, 1898, c. 541, § 322, as added June 22, 1938, c. 575, § 1, 52 Stat. 907."

Section 711 provides that upon the filing of a petition for Arrangement the bankruptcy court acquires exclusive jurisdiction of the debtor and his property. Section 711 reads as follows:

"§ 711. Exclusive jurisdiction of debtor and property

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located. July 1, 1898, c. 541, § 311, as added June 22, 1938, c. 575, § 1, 52 Stat. 906."

Section 712, which deals with "Jurisdiction, powers, and duties," provides:

"Where not inconsistent with the provisions of this chapter, the jurisdiction, powers, and the duties of the court shall be the same—* * *

"(2) where a petition is filed under section 722 of this title as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered at the time the petition under this chapter was filed. July 1, 1898, c. 541, § 312, as added June 22, 1938, c. 575, § 1, 52 Stat. 906."

Section 302 of the Bankruptcy Act, Chapter 11, Title 11 U.S.C.A. § 702, provides that the provisions of Chapters 1 to 7 of the Bankruptcy Act shall apply in proceedings under Chapter 11. Specifically, Section 702 provides: "The provisions of chapters 1 to 7, inclusive, of this title shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter, apply in proceedings under this chapter. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors', and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter. For the purposes of such application the date of the filing of the petition in bankruptcy shall be taken to be the date of the filing of an original petition under section 722 of this title, and the date of adjudication shall be taken to be the date of the filing of the petition under section 721 or 722 of this title except where an adjudication had previously been entered. July 1, 1898, c. 541, § 302, as added June 22, 1938, c. 575, § 1, 52 Stat. 905."

Section 110, sub. a, "Title to property," made applicable to proceedings under Chapter 11 by Section 702, specifically provides as follows: "The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy or of the original petition proposing an arrangement or plan under this title * * *."

Clause 6 of Section 110, sub. a, specifically vests in the trustee "rights of action arising upon contracts" of the bankrupt or debtor in an Arrangement proceeding.

Section 713, which deals with "Jurisdiction, powers, and duties," and "administration of estate", provides:

"Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it—

"(1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate;

"(2) upon such notice as the court may prescribe and upon cause shown, authorize the receiver or trustee, or the debtor in possession, to lease or sell any property of the debtor, whether real or personal, upon such terms and conditions as the court may approve;

"(3) whenever under this chapter the court is required or permitted to fix a time for any purpose, the court may upon cause shown extend such time. July 1, 1898, c. 541, § 313, as added June 22, 1938, c. 575, § 1, 52 Stat. 906."

Since the second phase of Fow's claim is for services rendered while the debtor was in possession, the provisions of Section 742 become pertinent. Section 742 reads as follows: "Where no receiver or trustee is appointed, the debtor shall continue in possession of his property and shall have all the title and exercise all the powers of a trustee appointed under this title, *subject, however, at all times to the control of the court and to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe.* July 1, 1898, c. 541, § 342, as added June 22, 1938, c. 575, § 1, 52 Stat. 909." (Emphasis supplied.)

Since, also, the referee has enjoined Fow from proceeding with his suit against the County Commissioners, it is pertinent to quote the provisions of Section 714, which reads as follows: "The court may, in addition to the relief provided by section 29 of this title and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a

debtor. July 1, 1898, c. 541, § 314, as added June 22, 1938, c. 575, § 1, 52 Stat. 907."

The sections of Chapter 11 and the various other relevant sections of the amended Bankruptcy Act above cited demonstrate conclusively, then, that with the filing of the petition for the Arrangement the bankruptcy court is vested with exclusive jurisdiction of the debtor and his property. It is worthy of note, also, that the Chandler Act changed the prior Bankruptcy Act so that when a trustee is appointed his title to the property of the bankrupt now dates back to the filing of the petition instead of to the date of adjudication and vests in the trustee when he qualifies by the filing and approval of his bond. See discussion by former Judge George E. Q. Johnson in his Commentary on the Chandler Act, p. xx, Title 11 U.S.C.A., Sections 201 to End.

Numerous authorities may be cited for the proposition that with the filing of a bankruptcy petition generally, the estate of the bankrupt is regarded as in custodia legis from the date of the filing of the petition: see McKesson & Robbins, Inc., v. Morris-Travis Drug Co., 6 Cir., 106 F.2d 681; that prior to the appointment of a trustee in bankruptcy, the property of the bankrupt is in custodia legis in the bankruptcy court, and is in full possession and control of the courts: Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28 (certiorari denied 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592).

In Taylor v. Sternberg, Trustee in Bankruptcy, 293 U.S. 470, page 472, 55 S.Ct. 260, page 261, 79 L.Ed. 599, it was held: "Upon adjudication in bankruptcy, all the property of the bankrupt vests in the trustee as of the date of the filing of the petition. Upon such filing, the jurisdiction of the bankruptcy court becomes paramount and exclusive; and thereafter that court's possession and control of the estate cannot be affected by proceedings in other courts, whether state or federal. Gross v. Irving Trust Co., 289 U.S. 342, 344, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 307, 32 S.Ct. 96, 56 L.Ed. 208; In re Diamond's Estate [6 Cir.], 259 F. 70, 73. This applies while the possession is constructive as well as when it becomes actual. Mueller v. Nugent, 184 U.S. 1, 14, 22 S.Ct. 269, 46 L.Ed. 405;

Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432, 433, 44 S.Ct. 396, 68 L.Ed. 770; Orinoco Iron Co. v. Metzel [6 Cir.], 230 F. 40, 44, 45, and cases cited."

Fow's attempt to circumvent operation of the provisions of the amended Bankruptcy Act by assertion of Section 26 of the contract between the County Commissioners and the debtor, which gives the County Commissioners the right to "withhold from the contractor such an amount or amounts as may be necessary to adjust claims for labor and services rendered and materials furnished in and about the work" and "to apply such retained amounts to the payment of such just claims", is a novel expedient which falls of its own weight.

■■ Although the question of the size of Fow's fee is for the primary consideration of the referee, I cannot refrain from the observation that it is wholly disproportionate under the circumstances such as exist here, where the total return under the contract to the bankrupt estate was $2,905.30.

Fow is seeking $1,500 for services rendered over a four-day period and the services appear to consist of negotiations with the County Commissioners for the continuance of the contract and in connection with the petition to this court for permission to continue the contract.

The record also discloses that Fow has additionally presented a claim for $330 before the referee for his services as counsel for the debtor.

For the reasons stated, the petition for certificate of review is denied, and the opinion and order of the referee is confirmed and affirmed.