**William R. MILLS, Plaintiff and Appellant,**

v.

**SHOPPERS CHARGE PLAN, INC., et al., Defendants and Appellees.**

Civ. No. 9072.

Supreme Court of North Dakota.

April 28, 1975.

Rehearing Denied July 1, 1975.

William R. Mills, pro se.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellees; argued by Gordon W. Schnell, Dickinson.

ERICKSTAD, Chief Justice.

In this case, William R. Mills appeals from a judgment of the district court of

Burleigh County which dismissed his action and imposed sanctions upon him.

Mills initiated his lawsuit in the district court of Burleigh County by complaint dated November 12, 1973, wherein two causes of action were asserted.

In the first cause of action, Mills asserts: On or about March 9, 1967, an involuntary petition for bankruptcy was filed against SCP Credit Card Corporation, Debt Adjustment Company, and Shoppers Charge Plan, Inc., the defendants herein; at said time the corporations retained him as counsel in connection with said involuntary petition; on behalf of said corporations, he filed a petition for arrangement under Chapter XI of the Bankruptcy Act; various amendments were made to the arrangement; on or about August 5, 1967, the amended arrangement was approved; on January 26, 1968, he requested termination of his services; on March 15, 1968, he was officially discharged as attorney for the corporations; at the time of his discharge or at some later time, he came into possession of funds of the corporations and retained $2,041.25 as compensation for services rendered; he was ordered by the Bankruptcy Court of the Southwestern Division of North Dakota on April 24, 1973, to return said money to the defendant corporations; he will pay or has paid said money to the clerk of the District Court pending disposition of his claim; no trustee has been appointed for the defendant corporations by the Bankruptcy Court; vast amounts of assets of the corporations are unaccounted for; the Attorney General's office has initiated steps to dissolve the defendant corporations and, accordingly, he fears that if he pays the said money to the defendants he will be unable to obtain relief for his services. He concluded his first cause of action with a prayer for judgment in the sum of $2,041.25 plus costs.

In his second cause of action, he asserts: He was retained on or about March 10, 1967, by the defendant corporations as attorney for the president of the defendant corporations in a criminal action by the United States against the president, Emil Dombowsky; he defended said Emil Dombowsky; the defendants paid him the sum of $500 for defending Mr. Dombowsky; he was ordered by the Bankruptcy Court of the Southwestern Division of North Dakota on April 24, 1973, to return said money to the defendants; he has paid or will pay said money to the clerk of the District Court pending disposition of his claim; no trustee has been appointed for the defendant corporations by the Bankruptcy Court; vast amounts of assets of the corporations are unaccounted for; the Attorney General's office has initiated steps to dissolve the defendant corporations; and he fears that if he pays the money to the defendants he will be unable to obtain relief for his services. He prays for judgment in the sum of $500 plus costs.

The defendants, for their answer, allege (1) the court does not have jurisdiction over the subject matter of the action, because it pertains to attorney fees charged by the plaintiff in a bankruptcy proceeding, which subject matter is entirely within the jurisdiction of the Federal courts; (2) the court does not have jurisdiction over the defendants herein because of insufficient service of process; (3) the plaintiff's claims for relief have been determined adversely to the plaintiff by a court having jurisdiction over the parties and subject matter, to wit, the United States District Court for the District of North Dakota, Southwestern Division, by judgment dated April 25, 1973, which judgment has become final and is res judicata as to the matters alleged in the plaintiff's complaint and is a bar to the plaintiff's claims herein; (4) the aforedescribed United States District Court has ordered the plaintiff to repay the said amount to the defendant corporations, and said order is res judicata as to the plaintiff's claims in this case; (5) the allegations of the plaintiff's complaint are made without reasonable cause and not in good faith and for that reason, the answering defendant is entitled to receive from the plaintiff reimbursement for reasonable expenses incurred

**168**

together with a reasonable attorney's fee; (6) because the action is without good grounds to support it, it violates Rule 11 of the North Dakota Rules of Civil Procedure and therefore should be stricken as sham and false, and sanctions should be imposed.

When the defendants moved for dismissal of the complaint, the trial court granted the motion and assessed costs and attorney fees.

The pertinent part of the judgment follows:

"IT IS HEREBY ORDERED, AD-
JUDGED AND DECREED

"I.

"That the Plaintiff's Complaint in this action is hereby in all things dismissed, with prejudice, for the following reasons:

"(a) That there has been insufficient service of process herein;

"(b) That the subject matter of this lawsuit is a matter within the exclusive jurisdiction of the United States District Courts; and

"(c) That the Plaintiff's claims in this lawsuit have already been determined adversely to him by a Judgment of the United States District Court for the District of North Dakota, Southwestern Division, dated April 25, 1973, in the above referred to bankruptcy proceeding; that said Court in said proceeding had jurisdiction over the parties and subject matter which included the parties and the subject matter of this lawsuit, and its Judgment has become final and is res judicata as to the Plaintiff's claims herein.

"II.

"That Judgment is hereby entered in favor of the above named Defendants and against the above named Plaintiff William R. Mills, in the sum of Two Hundred Seventy-four Dollars ($274.00), which said amount represents reasonable expenses ($24.00) and a reasonable attorney's fee ($250.00) which the Defendants are entitled to receive from the Plaintiff pursuant to Section 28–26–31 N.D.C.C. by reason of the Plaintiff's making of untrue allegations in his pleadings without reasonable cause and not in good faith, and bringing a vexatious lawsuit without any basis in law."

The facts are that on a review of $25,901.52 in fees received by attorney Mills in conjunction with services rendered the defendant corporations, the United States District Court approved all but the $500 retainer for the defense of Mr. Dombowsky on the criminal charges initiated by the Securities and Exchange Commission and the $2,041.25, which constituted fees charged by attorney Mills for legal services in conjunction with working out a plan of arrangement under Chapter XI of the Bankruptcy Act.

In its conclusions of law, the Federal court gave no reason for disallowing the $500 retainer, but it gave as its reason for disallowing the $2,041.25 that Mr. Mills had not been properly appointed as attorney for the debtor corporations under Bankruptcy General Order 44.

Judgment was entered on April 25, 1973, pursuant to the findings of fact, conclusions of law, and order for judgment dated April 24, 1973, of the United States District Court. As no appeal was taken from that judgment, it has become final.

Following entry of the judgment, Mills filed a petition in the Federal court seeking allowance of the same fees which had been disallowed by the court's judgment (and which are again involved here), which petition was denied by an order signed by Judge Van Sickle dated September 10, 1973, upon the grounds that the " * * * matter of attorney's fees was finally determined and settled by judgment of this Court entered on April 25, 1973, * * *"

Mills then filed in the Federal court an application for appointment as attorney nunc pro tunc, but such application was

denied by order of Referee Gordon Thompson dated September 19, 1973, upon the grounds that this matter had already been finally determined and therefore the application was untimely.

On this appeal, Mills seems to contend that the United States District Court judgment is not res judicata of his claims for the reason that the United States District Court did not determine that his fees were improper or excessive. He points out that the Federal court in paragraph VII of the findings of fact said that $2,014.25 represents a reasonable charge for services rendered. He insists that the court in effect merely denied him a mechanic's lien.

On the other hand, the corporations assert that the United States District Court denied the fees themselves and ordered Mills to repay the fees which he had retained in the amount of $2,541.25. We agree.

Mills urges that United States v. American Surety Co. of New York, 56 F.2d 734 (2d Cir. 1932), supports him in his contentions. In that case the United States brought suit upon a bond executed by the American Surety Company as surety for a perfume company as principal. The perfume company was adjudged a bankrupt upon an involuntary petition filed on January 29, 1925. Because of an alleged violation of the terms of the bond, to wit, a diversion of denatured alcohol for illegal purposes, the United States filed its claim in the bankruptcy proceedings. The referee denied the claim, apparently because the duty to account for the alcohol arose subsequent to the filing of the petition in bankruptcy and thus was a nonprovable claim under Section 63 of the Bankruptcy Act.

In holding that the disallowance in bankruptcy was not a bar to the government's action on the bond, the Circuit Court for the Second Circuit said:

"It may also be conceded that the allowance or disallowance of a claim in bankruptcy should be given like effect as any other judgment of a competent court, in a subsequent suit against the bankrupt or any one in privity with him. [Citations omitted.] But the distinction must be noted between disallowance of a claim because the creditor had a nonprovable debt and disallowance because he had no debt at all. Disallowance on the former ground decides nothing as to the merits of the claim. In the present case the record discloses that in disallowing the plaintiff's claim on its bond the referee in bankruptcy did not purport to hold that the claim was wholly without foundation, but that the duty to account for the alcohol arose subsequent to the filing of the petition in bankruptcy, and hence the claim was nonprovable under section 63 of the Bankruptcy Act (11 USCA § 103). Consequently the surety cannot in this suit rely upon the disallowance of the claim as a conclusive adjudication that the principal has not violated any of the conditions of the bond. * * *" United States v. American Surety Co. of New York, 56 F.2d 734, 736 (2d Cir. 1932).

That opinion, which refers to no other authority, is distinguishable from the instant case in that a creditor's claim, which arose after the filing of a petition in bankruptcy, was involved there, while in the instant case attorney fees for services are involved and attorney fees are subject to other law.

■ But assuming for the sake of argument only that claims of creditors and attorney fees are comparable, let us consider whether the attorney fees in this case are provable or nonprovable. If they are provable, they are allowable or disallowable debts; if they are provable and are disallowed, the decision disallowing them should be res judicata.

Collier on Bankruptcy states the issue thusly:

"Debts of the types specified in § 63 may be proved. They also *may* be allowed. But whether a debt so proved will actually be allowed is a distinct issue, and one that depends not only on prova-

bility. Allowance of a claim is determined by the court on the merits as a judicial act, and requires some order or action of the court to make it effective. The court may disallow a claim because it does not constitute a debt provable under § 63, or because the proof was belated, or because the claim is legally invalid, or barred by the statute of limitations, or because it has been discharged through payment, setoff or release. The infinite variety of reasons for which a claim may be disallowed explains why a disallowed claim and a nonprovable debt or claim are not identical things, and why a creditor whose debt is disallowed is not necessarily in the position of a creditor having a nonprovable debt and therefore unaffected by the bankrupt's discharge.

"The term 'provable debt' is thus not limited in its meaning to a debt against the allowance of which no defense can successfully be interposed. In fact, even an otherwise provable debt for whose proof and filing the statutory six months' period has already elapsed· is within the term 'provable debt' under § 17, and justifiably so, since there is no reason for treating the tardy creditor better, with regard to the bankrupt's discharge, than the diligent. * * *" [Emphasis in original.] 3A Collier on Bankruptcy, § 63, ¶ 63.05, at 1775–1777 (14th ed.).

In Hargadine-McKittrick Dry Goods Co. v. Hudson, 122 F. 232, 235 (8th Cir. 1903), a claim disallowed in bankruptcy court because of the running of the statute of limitations was nevertheless a provable debt and barred by discharge.

In *Hargadine*, the court said:

"Debts are not the less provable, within the meaning of the bankrupt act, because the statute of limitations may be successfully pleaded against their allowance. As well say that a debt was not suable because the statute of limitations might be pleaded to an action upon it. The plaintiff's judgment was a provable debt, and the fact that a recovery upon it might be defeated by the plea of payment, or a plea of the statute of limitations, or any other plea in bar, did not take it out of the class of provable debts. The term 'provable debts' does not mean only such debts as are valid, and against the allowance of which no defense can be successfully interposed." Hargardine-McKittrick Dry Goods Co. v. Hudson, 122 F. 232, 235 (8th Cir. 1903).

We are unable to understand how the attorney fees in the instant case could be considered nonprovable. It is rather our view that they were provable and disallowed for other reasons.

The $500 retainer may have been disallowed because it was paid for the defense of a corporate official in a criminal proceeding and thus is not a corporate expense. It is our view that the burden rests upon the appellant to show that it was not properly disallowed.

The $2,041.25 was disallowed because the attorney failed to comply with General Order 44 of the Bankruptcy Act which required court appointment of an attorney for a debtor in possession.

■ We take the view that an adjudication in bankruptcy court in conjunction with a Chapter XI of the Bankruptcy Act proceeding, approving a plan of arrangement with a debtor in possession and ruling on attorney fees, is as final as an adjudication in conjunction with a case under Chapters I to VII of the Bankruptcy Act, and accordingly we conclude that the United States District Court judgment is res judicata of the issue in this case. See Heasley v. Glinz, 142 N.W.2d 606 (N.D.1966).

Section 2 of the Bankruptcy Act invests courts of bankruptcy with original jurisdiction in proceedings under this Act.

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter

changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—" 11 U.S.C.A. § 11(a).

These "proceedings in bankruptcy" are defined in 8 Collier on Bankruptcy, paragraph 3.01[5] of § 311 at pages 151 and 152, as:

> " 'Proceedings in bankruptcy' are those matters of an administrative character which are presented in the ordinary course of administration of a bankrupt's estate. Such 'proceedings include, among others, all matters of administration, such as the allowance, rejection, and reconsideration of claims, the reduction of the estates to money, and its distribution, the determination of the preferences and priorities to be accorded to claims presented for allowance and payment in regular course, and the supervision and control of the trustees and others who are employed to assist them.' In such administrative matters, the courts of bankruptcy have summary jurisdiction. That jurisdiction is exclusive of all other courts, both state and federal, and the bankruptcy court itself is powerless to surrender its exclusive control of the administration of the estate. The summary jurisdiction of the bankruptcy court in 'proceedings in bankruptcy' under Chapters I to VII has not been affected by § 311, and remains the same in arrangement cases under Chapter XI." 8 Collier on Bankruptcy, § 311, ¶ 3.01[5] at 151, 152 [14th ed.].

In the footnotes to the above paragraph, at page 151, Collier refers to this principle of jurisdiction as applied in Chapter XI cases, and he cites the case of Matter of Breinig (E.D.Pa.1941), 40 F.Supp. 29, for its holding that the "bankruptcy court has exclusive jurisdiction to determine attorney's fees for services rendered the debtor in a Chapter XI case."

There are several other sections of the Bankruptcy Act that specifically relate to the jurisdiction and control which the bankruptcy court has over the question of attorney fees which an attorney may charge or collect from a bankrupt (or debtor in a Chapter XI proceeding). In this connection see, for example, Section 60d of the Bankruptcy Act, which gives the court power to reexamine attorney fees paid by the bankrupt or debtor; Section 62d, which requires an attorney seeking compensation for services to petition the court for allowance thereof and to submit an affidavit therewith regarding whether any agreement exists for a division of compensation; and Section 64a(1), which governs the priority to which attorney fees are entitled as an expense of administration of the bankrupt estate and also functions as authority for their allowance and payment. See also the former General Order 44 that was in effect at the time of the entry of the judgment in the Federal court, which requires that an attorney for a debtor in possession must be appointed by order of the court. The general rules have now been superseded by the new bankruptcy rules, and General Order 44 has been replaced by Rule 215. Other rules which apply to the court's jurisdiction and power over attorney fees include Rule 219(b) and Rule 220.

■ For a second reason, then, that the allowance of attorney fees in conjunction with any phase of the Bankruptcy Act appears to be exclusively in the Bankruptcy Court, we conclude that Mills' remedy, if he had any, to the disallowance of attorney fees was in an appeal from the judgment of the United States District Court to the United States Circuit Court of Appeals.

■ Having so decided, we need not determine whether the State District Court judgment is sustainable on other grounds stated by that court. We must, however, decide whether the sanctions imposed by that court are proper and whether the additional sanctions sought in this court should be allowed.

Counsel for the corporations asserts that the trial judge imposed sanctions under Section 28–26–31, N.D.C.C. It reads:

"28–26–31. Pleadings not made in good faith.—Allegations and denials in any pleadings in court, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial." N.D.C.C.

Mills asserts that the trial court erred in imposing sanctions in that none of the allegations in any of his pleadings were untrue.

Counsel for the corporations contends that if the defense of res judicata is applicable, then any subsequent lawsuit brought to again try to collect the fees would necessarily be premised upon allegations that were untrue and made without reasonable cause. He refers us to Ready v. Ready, 33 Ill.App.2d 145, 178 N.E.2d 650 (1962); Schroeder v. Busenhart, 80 Ill.App.2d 431, 225 N.E.2d 702 (1967); Manchester Insurance and Indemnity Company v. Strom, 122 Ill.App.2d 183, 258 N.E.2d 150 (1970); Lipscomb v. Coppage, 44 Ill.App.2d 430, 197 N.E.2d 48 (1963); and Grandys v. Spring Soft Water Conditioning Company, 101 Ill. App.2d 225, 242 N.E.2d 454 (1968).

Our view of those cases is that they do not, such as in this case, involve difficult legal questions in a field of law in which the general practitioner and State judges are inexperienced. It may be that under different circumstances not involving the Bankruptcy Act or other complex fields of Federal law that a res judicata situation would justify sanctions, but we are not convinced that this is the case in which to apply them. We are not unaware that counsel for the corporations has argued bases for sustaining the trial court which we have not discussed herein. We have considered them and do not find that they would justify sanctions.

We conclude that the trial court erred in imposing sanctions under the authority of Section 28–26–31, N.D.C.C.

The defendant corporations assert that under Section 28–26–31, N.D.C.C., and Rule 38 of the Rules of Appellate Procedure, additional sanctions in the amount of $972 for attorney's time spent in this appeal and double costs should be imposed in this court.

"Rule 38

"*Damages For Delay*

"If the court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee, including reasonable attorney fees." N.D.R.App.P.

In light of what we have said relative to sanctions imposed by the trial court, we conclude that it would be improper to impose additional sanctions in this court.

The judgment of the trial court is therefore affirmed as to dismissal of plaintiff's complaint but is modified as to the imposition of sanctions, and the case is remanded for disposition not inconsistent with this opinion.

SAND, PAULSON and PEDERSON, JJ., and ROY A. ILVEDSON, District Judge, concur.

ROBERT VOGEL, J., deeming himself disqualified, did not participate. ROY A. ILVEDSON, District Judge of the Fifth Judicial District, sitting in his stead.