# CONRAD, RUBIN & LESSER v. PENDER, TRUSTEE IN BANKRUPTCY.

No. 718. Argued May 9, 1933.—Decided May 29, 1933

*Mr. Samuel Rubin* argued the cause for petitioners, by permission *pro hac vice,* and with *Mr. David J. Colton* filed a brief on their behalf.

*Mr. George C. Levin,* with whom *Mr. Sydney Krause* was on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

By an order made by a referee in bankruptcy under § 60 (d) of the Bankruptcy Act, 11 U.S.C., 96 (d), appellants were directed to turn over to the trustee in bankruptcy the sum of $2,000, which was part of an amount paid to them by the bankrupt corporation for legal serv-

ices rendered shortly before the filing of an involuntary petition. The order was sustained by the District Court, *In re David Bell Scarves, Inc.*, 52 F. (2d) 755, and by the Circuit Court of Appeals. 61 F. (2d) 771. This Court granted certiorari.

The only question presented is raised by the appellants' challenge of the jurisdiction of the referee to reëxamine the payment under § 60 (d). The payment was made on November 5, 1930, and the petition in bankruptcy was filed twelve days later. There is no room for controversy as to the facts which are thus stated by the Court of Appeals: The corporation was in financial difficulties and unable to meet its maturing obligations. Prior to retaining the appellants, it had engaged another attorney to negotiate a settlement with its creditors, and a meeting with some of its creditors had been held. Apparently the appellants were retained to supplement the efforts of that attorney, to whom $750 had already been paid upon a promised fee of $2,000. The testimony of one of the appellants, given at an examination under § 21a, was to the effect that he was to negotiate with creditors for a 50 per cent. cash settlement and was to assist the corporation in hypothecating its accounts receivable in order to obtain the necessary money to carry out such a settlement. His affidavit, submitted in opposition to the referee's jurisdiction, stated that the most extreme course which was within the contemplation of himself and David Bell, bankrupt's president, was continuance of the business under an equity receivership, although that course was not contemplated if the business could be continued under the supervision of a committee of creditors or of a representative of the New York Creditors' Adjustment Bureau, Inc. It also appeared that within two weeks prior to November 5th, when the appellants' retainer was paid, David Bell had withdrawn

$1,500 from the corporation, and his brother, an employee, had withdrawn $750. The cash resources of the corporation were so low that appellants' retainer could not be paid until a sale of merchandise was made, and the purchaser's check for $2,500 was then indorsed to appellants.

The District Court concluded that the thought of bankruptcy was the impelling motive of the debtor corporation when its president retained appellants. And the Court of Appeals was of the opinion that in these circumstances the payment was made " in contemplation ". of bankruptcy within the meaning of § 60 (d).[1]

That provision has been held to be *sui generis*. It does not contemplate a plenary suit, but a summary proceeding. *In re Wood & Henderson,* 210 U.S. 246, 251–253. The class of cases to which it refers is not that of preferences or of fraudulent conveyances. *Id.* The provision authorizes reëxamination of payments or transfers when made by a debtor (1) " in contemplation of the filing of a petition by or against him," (2) " to an attorney and counselor at law, solicitor in equity, or proctor in admiralty," and (3) " for services to be rendered." Such payments or transfers are only to " be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

The language of the provision, and the indicated scope of the legal services embraced within it, distinguish it,

---

[1] Section 60 (d) provides as follows: "(d) If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

from the provision of § 64b (3), 30 Stat. 563; 11 U.S.C. 104 (b) (3),[2] with respect to the priority of a reasonable attorney's fee in the distribution of an estate in bankruptcy.[3] See *Furth* v. *Stahl*, 205 Pa. St. 439, 442; 55 Atl. 29; *Pratt* v. *Bothe*, 130 Fed. 670, 673. Section 60 (d) relates to payments and transfers made by the bankrupt prior to bankruptcy from his own property for services to be rendered to him; § 64b (3) to an allowance to be made for legal services out of the estate under administration. See *In re Rolnick*, 294 Fed. 817, 819. The services within the latter provision are those rendered in aid of the administration of the estate and the carrying out of the provisions of the Act. See *Randolph* v. *Scruggs*, 190 U.S. 533, 539; *In re Kross*, 96 Fed. 816; *In re Mayer*, 101 Fed. 695; *In re Rosenthal & Lehman*, 120 Fed. 848; *In re Christianson*, 175 Fed. 867. Section 60 (d), authorizing a reëxamination of payments and transfers by the bankrupt for services to be rendered, has a broader scope. It contains no intimation of an intention to limit the jurisdiction to reëxamine to a particular sort of legal services for the payment of which the debtor has disposed of his property. The point of the provision conferring jurisdiction for a summary reëxamination is not the specific nature of the legal services to be rendered but that the

---

[2] Section 64b (3) provides: "(b) The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be . . . (3) the cost of administration, . . . and one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases as the court may allow; . . ."

[3] Cf. *In re Kross*, 96 Fed. 816, 818, 819; *In re Habegger*, 139 Fed. 623, 627; *In re Christianson*, 175 Fed. 867, 868; *In re Secord*, 296 Fed. 231, 232.

payment or transfer to provide for them is made " in contemplation " of bankruptcy. The purpose is shown by the sweeping description of payments or transfers " to an attorney and counselor at law, solicitor in equity, or proctor in admiralty."

We agree with the Court of Appeals that the criteria of jurisdiction to reëxamine are distinct from the criteria of the decision on the merits. As to the jurisdiction to reëxamine, the controlling question is with respect to the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction. Compare *United States* v. *Wells,* 283 U.S. 102, 117, 118; *Tripp* v. *Mitschrich,* 211 Fed. 424, 427. If the payment or transfer was thus motivated, it may be reëxamined and its reasonableness be determined. Undoubtedly, while the question thus relates to the debtor's motive, the nature of the services which he seeks and for which he pays may be taken into consideration as it may throw light upon his motive. It is not impossible that the services may have been so wholly separate from any exigency of bankruptcy as to indicate that the thought of bankruptcy was in no sense controlling. But, given the fact that the payment or transfer was in contemplation of bankruptcy, the inducement of the transaction affords, from the standpoint of the statute, sufficient ground for authorizing a summary inquiry into its reasonableness. The manifest purpose of the provision is to safeguard the assets of those who are acting in contemplation of bankruptcy, so that these assets may be brought quickly and without unnecessary expense into the hands of the trustee, and to provide a restraint upon opportunities to make an unreasonable disposition of property through arrangement for excessive payments for prospective legal services. *In re Wood & Henderson, supra; Pratt* v. *Bothe, supra.* We said in the case of *Wood & Henderson* that the statute " recognizes

the temptation of a failing debtor to deal too liberally with his property in enabling counsel to protect him in view of financial reverses and probable failure. It recognizes the right of such a debtor to have the aid and advice of counsel, and, in contemplation of bankruptcy proceedings which will strip him of his property, to make provisions for reasonable compensation to his counsel. And in view of the circumstances the Act makes provision that the bankruptcy court administering the estate may, if the trustee or any creditor question the transaction, reëxamine it with a view, to a determination of its reasonableness."

In this view, we are unable to conclude that the question whether the services for which the payment or transfer is made are "germane to the aims of the Bankruptcy Act," as suggested in some of the decisions,[4] furnishes the test of the jurisdiction to reëxamine. The test of jurisdiction, we repeat, is given by the express language of the statute. In the exercise of jurisdiction, all questions bearing upon the reasonableness of the transaction, including the purpose and nature of the services, are open to consideration. But it is insisted, in the instant case, that the payment to appellants could not properly be regarded as made in contemplation of bankruptcy, and hence within the jurisdiction to reëxamine, because the payment was for the purpose of engaging appellants to conduct negotiations with creditors in order to arrange for an extension of time, and, if necessary, for the operation of the business under the creditors' supervision, and thus to avoid a forced liquidation and ultimately to restore the business to a sound basis. We find no ground for saying that the fact that such purposes were in view establishes, as matter of law, that the payment was not in contempla-

---

[4] See *In re Habegger,* 139 Fed. 623; *In re Stolp,* 199 Fed. 488; *In re Rolnick,* 294 Fed. 817; *In re Lang,* 20 F. (2d) 239; *Quinn* v. *Union National Bank,* 32 F. (2d) 762.

tion of bankruptcy. On the contrary, negotiations to prevent bankruptcy may demonstrate that the thought of bankruptcy was the impelling cause of the payment. "A man is usually very much in contemplation of a result which he employs counsel to avoid." *Furth* v. *Stahl, supra.* See, also, *In re Klein-Moffett Co.,* 27 F. (2d) 444; *Slattery* v. *Dillion,* 17 F. (2d) 347; *In re Lang,* 20 F. (2d) 239.

We are of the opinion that the court had jurisdiction to make the order under review.

*Affirmed.*