## In re JAN W. PARIS, Inc.

District Court, S. D. New York.
Oct. 26, 1934.

Krause, Hirsch & Levin, of New York City (Geo. C. Levin, of New York City, of counsel), for trustee.

Nelson Littell and Louis F. Stumpf, both of New York City, for respondent in person Bernard G. Heyn.

CAFFEY, District Judge.

I regret the delay in disposing of this matter since the briefs came in. There has not been earlier opportunity, however, to go over the papers. Even now time is not available to discuss the numerous law questions argued or fully to recite the evidence in the quite voluminous record. I shall, therefore, deal with a few points only which seem to me to go to the heart of the case.

Nothing is involved except payments by the bankrupt (hereinafter called the corporation) in 1932 to the respondent for legal services.

There are two items. One is $725 and the other is $3,375. The questions raised as to each are different.

The $725 covered services rendered prior to April 20 and was paid April 26. The evidence was conflicting and, in so far as in some respects not conflicting, it lent itself to divergent inferences concerning this particular payment.

I accept the view advanced by the trustee that the question whether there is a right to recover the $725 is determinable under the rules laid down in Kolkman v. Manufacturers' Trust Co. (C. C. A.) 27 F.(2d) 659, and Matters v. Manufacturers' Trust Co. (C. C. A.) 54 F.(2d) 1010. Within that rule I believe it obvious that the sole problem is whether or not the referee's findings (report, p. 13) should be sustained.

It is to be remembered that the review before me is appellate. In re Pearlman (C. C. A.) 16 F.(2d) 20. In order to make his findings, it was essential that the referee determine the credibility of testimony. For that reason, on what is the equivalent of an appeal, I am not entitled to override the view he took as to the weight which should be given to the testimony of the witnesses. In re Gordon & Gelberg (C. C. A.) 69 F.(2d) 81. Inasmuch as there was adequate evidence to warrant the findings of the referee, I am prohibited by General Order 47, 11 USCA following section 53 (286 U. S. 572), in the absence of plain error by him, from reversing his findings, and I do not think he made an error of this kind in his findings.

It follows that the trustee has not shown a right to recover the $725.

With respect to the $3,375, the payment of which has been subjected by the referee to re-examination under section 60d of the Bankruptcy Act (11 USCA § 96 (d), complaint is made by both sides of the referee's order, and some questions additional to those that affect the $725 must be disposed of.

In the first place, the respondent insists that the referee did not have summary jurisdiction of the matter. The contrary, with respect to the jurisdiction of the court, is settled by Conrad, Rubin & Lesser v. Pender, 289 U. S. 472, 53 S. Ct. 703, 77 L. Ed. 1327 [see, also, In re Buchanan (C. C. A.) 66 F.(2d) 416; compare generally United States v. Maresca (D. C.) 266 F. 713], and under Bankruptcy Rule 20 the referee, after adjudication, had power to exercise the court's jurisdiction in this respect. Moreover, even if, as matter of law merely, it were otherwise, the respondent consented to summary jurisdiction, as appears by the minutes in the equity suit of the trustee against the respondent (pp. 53–56 (a) and by the minutes before the referee in the so-called turnover proceedings (pp. 6, 7).

Next, the respondent says that the referee should have admitted the testimony of the president and secretary of the corporation given at the 21a examination which was excluded when offered in the turnover proceedings (minutes, pp.

37, 86). As I see it, however, it is manifest that this testimony was incompetent, because hearsay, as against the trustee. Cf. In re Wilcox (C. C. A.) 109 F. 628; In re Alphin & Lake Cotton Co. (D. C.) 131 F. 824; Breckons v. Snyder, 211 Pa. 176, 182, 60 A. 575. I do not think that In re Thompson (D. C.) 197 F. 681, is to the contrary. It seems to me clearly distinguishable on its own particular facts. Indeed, weight might well be given to the failure of the respondent himself to produce as witnesses the president and secretary of the corporation, who, together with himself, composed the board of directors, upon the issue as to what was the state of mind of the corporation. In this connection see Mammoth Oil Co. v. United States, 275 U. S. 13, 51–53, 48 S. Ct. 1, 72 L. Ed. 137.

This brings us to the merits of the controversy as to the $3,375. Upon the evidence there are only two issues, as is manifest from the express words of section 60d and as has been determined in Conrad, Rubin & Lesser v. Pender, supra. These questions are: (1) Was the $3,375 for future services? and (2) Was its payment made in contemplation by the corporation of its bankruptcy?

It perhaps would be enough to say, with respect to these questions, as has heretofore been said in regard to the $725 item, that the referee's findings on the $3,375 item (report, pp. 14–16) are not, under the rules applicable thereto as previously stated, open to reversal by this court on the present review. I shall, however, supplement somewhat the referee's statement on the subject.

It is to be borne in mind that it is established without dispute that the respondent on April 26 was fully paid for all services to the corporation up to April 20; also that by June 10 he had been fully paid for his services up to then, in exact compliance with the terms of the retainer contract existing between himself and the corporation up to that date. The consequence is that on June 10 there were no past services for which there was any basis whatever for him to ask compensation. An additional consequence is that on June 10 the only services for which there was any possible justification on the part of the corporation for using its funds to compensate the respondent were those to be rendered in future. This fact merely substantiates the conclusion of the referee that the payment of the $3,375 was for future services. If the referee had reached a different conclusion, I am inclined to think that, on the undisputed facts in regard to this particular issue, it would have been my duty to reverse him. In re M. & M. Mfg. Co., Inc. (C. C. A.) 71 F.(2d) 140.

Remembering, what was further pertinent in the course of the referee's re-examination of the $3,375 payment, namely, what was the state of mind of the corporation on the day the payment was made (June 10), so also I wish to call attention to some phases of the evidence not fully covered by the referee's discussion.

Let it be assumed, as claimed by the respondent, that the retainer agreement created a lien in his favor on the $3,900 deposited in a special bank account; also that if that agreement had continued in effect it would have been an obstacle to the re-examination of payments out of that sum to him. Nevertheless, the outstanding fact is that on June 10 the retainer agreement was revoked by mutual consent of the parties thereto. Manifestly, up to the time of revocation the unexpended $3,375 of the $3,900 was merely a trust fund. The very contention on the present argument by the respondent that the retainer agreement created a lien thereon in his favor necessarily implies that the beneficial title to the bank deposit still remained in the corporation up to June 10. Whether that be true or not, when the retainer agreement was annulled, title to the unexpended balance of the fund thereupon eo instanti was reinvested in the corporation. This fact is of consequence, because it follows therefrom that the inquiry, on this branch of the case, concerns only the corporation's state of mind on June 10.

As far back as April 20, the retainer agreement itself recited that liquidation was in the mind of the corporation. The respondent, in effect, concedes that the commencement on June 9 of a suit against the corporation for approximately $40,000, which would necessarily involve legal services thereafter, not covered by the retainer agreement, was the real occasion for the abandonment of the retainer agreement (turnover minutes, pp. 39–41). If what occurred on June 10 had been con-

fined to what payment should be made to the respondent, his contention that the corporation did not then contemplate bankruptcy would perhaps be more plausible. When, however, we take into account that (a) of the three officers, constituting the board of directors, one (the secretary) was only a bookkeeper who, so far as appears, had no money claim, and (b) the other two, who were president and vice president, each brought up at the June 10 directors' meeting a claim for a substantial payment in cash, the picture is greatly shifted. At the time other creditors were pressing. Yet the two insiders, who actually were exercising control of the corporation's affairs, turned their attention as directors to procuring cash payments to themselves from the corporation. Why were they at the moment so insistent? It is difficult to ascribe their conduct, in their capacity as directors, to any other motive than a realization of the possibility of bankruptcy. It seems to me, therefore, that the conduct of the corporation, in and of itself, strongly indicates that its impelling thought at the time was that bankruptcy might follow.

It is to be noted that the release of the respondent from the retainer agreement was on the very day the $3,375 was paid. Thirteen days later the president received $12,500. This $12,500 payment to the president was made on the identical day when the corporation determined to execute a general assignment. In the meanwhile other creditors had continued pressing. Do not the subsequent events, confining ourselves even to those which occurred within two weeks after the assailed transfer to the respondent on June 10, furnish the key to ascertaining the state of mind of the corporation at the time it made the criticized transfer?

It may be urged that the corporate resolution of June 10, providing for the $3,375 payment to the respondent, recited that this was for past legal services. The record shows, however, as heretofore pointed out, that there were no previous legal services by the respondent for which he had not already been fully paid. Moreover, the mere self-serving declaration in the resolution by these insiders obviously cannot foreclose an inquiry into the facts. As the referee has found, so I agree, that the $3,375 payment cannot properly be regarded as a payment for services other than those to be rendered subsequent to June 10.

On the present review the bankruptcy trustee makes no objection to the $525 payment for services between April 20 and June 10. Objection is made, however, to the allowance of $1,000 for services rendered by the respondent to the corporation subsequent to June 10. In this respect I think the referee was right.

It is true that the respondent contended that no part of the $3,375 was agreed to be paid on account of the services subsequent to June 10. If his contention were accepted, it may well be that he would thereby be cut off from the $1,000 credit allowed him by the referee. When, however, it is borne in mind that what the referee was engaged in was a re-examination, under section 60d, of the reasonableness of the compensation to the respondent for services subsequent to the payment, it seems to me that the requirement is absolute that the lawyer concerned have the benefit of the fair worth of the services rendered during the period under inquiry.

There may be room for difference of opinion as to the value of the services after June 10. The testimony on the subject is very general. Nevertheless, I am persuaded that the record affords no justification for reversing the referee in fixing the value at the figure he did.

Report confirmed. Settle order on two days' notice.