**In the Matter of Joseph William HALL and Christine Hall, Bankrupts.**

**Nos. 65–4181, 65–4182.**

United States District Court
E. D. Kentucky,
Covington Division.

Nov. 1, 1965.

William I. Bubenzer, Covington, Ky., for bankrupts.

SWINFORD, Chief Judge.

Joseph William Hall and Christine Hall filed their voluntary petitions in bankruptcy in which they listed liabilities of $12,701.29, secured claims, and $7,233.73, unsecured claims, for a total of $19,935.02. They listed assets of $9500 for real estate and $810 personal property, claiming an exemption of $1567.50. They showed income for two years immediately preceding the filing of the original petitions of $7,356.08 for 1963 and $8,102.98 for 1964. It should also be pointed out that at the time of the filing of the petitions Joseph William Hall was gainfully employed and was earning a take-home pay of $105.33 per week. The petitions were filed on February 20, 1965 by their attorney, Mr. William I. Bubenzer of Covington, Kentucky. At the time of presenting the voluntary petitions each of the bankrupts offered with the respective petitions for filing an affidavit of inability to pay filing fees which were subscribed and sworn to before their attorney, William I. Bubenzer, as a notary public on February 11, 1965.

Among the assets listed by the bankrupt, Joseph William Hall, was a 1959 Plymouth automobile, valued at $300, which had a retail book value of $475. It was ascertained by the referee during the proceedings that on February 8, 1965 the bankrupts had executed to their attorney, William I. Bubenzer, a note of $504.35 secured by a mortgage of even date and amount upon the 1959 Plymouth automobile. The mortgage was placed of record February 10, 1965, which was one day prior to the signing of the affidavits.

By order of April 30, 1965 the referee adjudged that the note and mortgage was an effort to fix the fee of the attorney of record at a rate in excess of the average fee and was an overreaching of the attorney on unlearned debtors in dire circumstances and inconsistent "with the high ethics of the legal profession." The referee found that a reasonable fee for the representation of the bankrupts was the sum of $200. He set aside the lien held by the attorney on the 1959 Plymouth automobile except to the extent of the $200 fee. He ordered that the vehicle be delivered to the trustee to be sold free of all liens and encumbrances and that the trustee be directed to pay William I. Bubenzer $200 out of the proceeds of the sale. The referee found further that "having the bankrupts execute affidavits that they were unable to obtain money for payment of the filing fees in this proceeding when in fact such fees could have been obtained by sale of the vehicle, the attorney of record in fact induced and participated in the filing of what amounts to false affidavits with the Court in this proceeding."

It is for a review of this order that the attorney files the petition which is now before the court.

Section 60, sub. d of the Bankruptcy Act, 11 U.S.C. § 96, sub. d, provides that if a debtor in contemplation of filing a petition in bankruptcy pays money or transfers property to an attorney for services to be rendered, the transaction shall be reexamined by the court and held valid only to the extent of a reasonable amount, with the excess to be recovered by the trustee for the benefit of the estate. The referee was well within the law when, after learning of the transaction, he set the lien aside and reduced the fee to $200. It should be borne in mind that bankruptcy is essentially an equitable proceeding. "In the allowance of fees in bankruptcy cases, counsel and the court should bear in mind the ability of the client to pay is an element to be taken into consideration, and fees in such cases should never be as large as where the client is in no financial difficulties and the efforts of the attorney brings (sic) substantial reward." In Re Herald-Post, Inc., W.D.Ky., 21 F.Supp. 231. In the Herald-Post case the gross estate coming into the hands of the trustee was $130,375.49 with lien claims aggregating $103,809.68, leaving a balance for the payment of expenses of administration

and distribution to unsecured creditors of $26,565.81. The court allowed the attorney for the bankrupt $750.

While the attorney in the instant case sets forth that he had fifty telephone calls and numerous other conferences with his clients, which representations the court must necessarily accept, it must be conceded that his time was not imposed upon nearly so much as in the Herald-Post case involving over a hundred thousand dollars in claims and assets. "Time spent and appellants' standing in the field are relevant factors in considering the amount of the fee. However, the size of the estate and the amount available are also relevant factors." Levin & Weintraub v. Rosenberg, 2 Cir., 330 F.2d 98. Under the terms of Section 60, sub. d of the Bankruptcy Act, 11 U.S.C. § 96, sub. d, "the fees allowable to the attorney for the bankrupt in a voluntary proceeding are limited to services rendered prior to the bankruptcy in the preparation of the schedules, securing the adjudication and attending the first creditors' meeting. Other services rendered before the appointment of the trustee, are compensable only when they are beneficial to the estate." In Re Charles Ray Glass, Inc., D.C., 47 F.Supp. 428. This section is only to fix compensation for services rendered before the filing of the petition. In Re Falk, 2 Cir., 30 F.2d 607.

■■■ Since this case concerns only services rendered before the filing of the petitions, it is not to be confused with Section 64, sub. a(1) of the Act, 11 U.S.C. § 104, sub. a(1), which deals with a lawyer's services in the preservation of the estate subsequent to the filing of the petition. That section contemplates the compensation for an attorney acting for the trustee or the court. The case of Lewis v. Fitzgerald, 10 Cir., 295 F.2d 877, cited by the referee in his Certificate on Petition for Review is not relevant here. The differences between the two sections are important and can cause some confusion if they are not kept clearly in mind. The manifest purpose of the provision under which this allowance to the bankrupts' attorney was made was that the assets might be brought quickly and without unnecessary expense into the hands of a trustee. Except under unusual circumstances it is not good practice for the bankrupt to transfer property to his attorney in contemplation of bankruptcy. The court should reexamine such a transaction when it is called to its attention. Conrad, Rubin & Lesser v. Pender, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327; 3 Collier, Bankruptcy, Section 60.69–60.70; see also 3 Collier, Bankruptcy, Section 62.31.

Since the very nature of bankruptcy is to forever foreclose the collection of legitimate claims, those charged with the duty of making the liquidation are frequently suspect insofar as the creditors are concerned. Consequently, it is imperative in protecting the integrity of the court that allowances must be kept at a minimum. Economy in the administration of these estates is to be strictly enforced. This principle should be kept in mind in fixing compensation of attorneys and trustees. It is only proper that they should be the favorite object in furthering economy.

■■■ The petitioner questions the correctness of the referee's determination that the 1959 automobile was an unencumbered asset at the time the petitioner obtained his chattel mortgage or security interest. The referee and the trustee state that the automobile was unencumbered within the contemplation of bankruptcy proceedings since the trustee would prevail over all unrecorded security interests and no recordation as required by KRS 355.9–401 had occurred prior to the petitioner's filing. This position is supported by KRS 355.9–301(3) and section 70, sub. c of the Act, 11 U.S.C. § 110, sub. c. KRS 355.9–301(3) states that a trustee in bankruptcy takes priority over any unperfected security interest; filing in accordance with KRS 355.9–401 is required in order to perfect a security interest in an automobile, according to KRS 355.9–302(1) (d), so long as it is not shown that all the creditors knew of the unperfected security interest. Section

70, sub. c of the Bankruptcy Act vests the trustee with all the rights, powers and priority of a creditor who obtained a judicial lien as of the date of bankruptcy; as such the trustee has secured status and can prevail over the claims of all unsecured creditors. The court accepts the referee's finding that no liens had been entered on the automobile's registration certificate prior to that of the petitioner and is satisfied that the referee was not in error when he determined the automobile to be an unencumbered asset at the time the petitioner obtained his security interest therein.

The next ground for review concerns the referee's determination that false affidavits were filed in this action and that the petitioner induced and participated in such filing. The petitioner does not dispute that it is improper for an attorney to receive payment for his services and then file a pauper's affidavit for his bankrupt client (page 5, petitioner's brief). He contends instead that his security interest on the automobile could not constitute payment since he could not have prevailed over an unrecorded security interest in favor of the Universal C. I. T. Corporation. Regardless of whether or not he could have actually prevailed over C. I. T., this security interest which he did obtain and perfect was intended as a discharge of his clients' debt or obligation to him. As such it constituted a payment. As seen above, the Plymouth automobile was an unencumbered asset before the petitioner obtained his security interest. The bankrupts, with the petitioner's aid, signed affidavits that they were unable to obtain the filing fees for this proceeding. Such filing fees could have been obtained from the sale of their automobile if they had not the day before given petitioner a security interest therein for its full value. If the automobile's full value had represented a reasonable attorney's fee, the court might reach a different result. But, after reviewing the facts presented in the record and briefs, the court is satisfied that the referee was not in error when he determined that false affidavits were filed in this action and that the petitioner induced and participated in this filing.

The petitioner defends his actions by stating that he acted upon a good faith belief that if he had sold the automobile for his clients in order to pay the filing fees, he and they would have violated KRS 434.210. After the institution of these proceedings, the trustee could have paid petitioner a reasonable attorney's fee plus filing expenses out of the estate pursuant to an oral or written promise from his clients. Section 60, sub. d of the Act, 11 U.S.C. § 96, sub. d (1964). The petitioner did not have to obtain the security interest in the Plymouth automobile in order to protect his reasonable interests.

Another ground for review concerns the discretion of the referee in forwarding his findings to the Kenton County Bar Association without affording the petitioner an opportunity to rebut the charges or appeal the decision. The petitioner claims this was an abuse of judicial discretion but his main complaint is directed toward the referee's failure to grant him a hearing.

The court is of the opinion that the petitioner should have been given a hearing. The record indicates that opportunity was given for this but apparently the petitioner made no formal request before the necessary steps in the proceedings were had. General Order 47, 11 U.S.C.A. foll. Sec. 53, provides that upon the filing of a report by the referee, the judge may adopt, modify or reject it in whole or in part or may request further evidence. 8 Remington, Bankruptcy, Section 3415; MacNeil v. Bailen, 1 Cir., 143 F.2d 230; In Re Albert-Harris, Inc., 6 Cir., 313 F.2d 447; Namoff v. Hyland Electrical Supply Company, 7 Cir., 275 F.2d 14.

The petition for review of the referee's order dated April 30, 1965 should be overruled in part and sustained in part. An order in conformity with this memorandum is this day entered.