446 F.Supp. 196 (1978)
In the Matter of Allen DAWSON, Bankrupt.
Civil No. 78-127 C (3-a).
United States District Court, E. D. Missouri, E. D.
March 6, 1978.
*197 Jack F. Allen, Clayton, Mo., for appellant.
Sheldon D. Grand, Clayton, Mo., for trustee.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon the appeal of Jack F. Allen, attorney for the bankrupt, from an order of the bankruptcy judge allowing attorney's fees to appellant in the amount of $115.00. Appellant seeks an award of attorney's fees in the amount of $935.30.
On August 22, 1977, the Bankruptcy Judge awarded appellant $75.00 for compensable services rendered to the bankrupt by virtue of § 64a(1) of the Bankruptcy Act. Upon motion of appellant, the August 22, 1977 order was set aside and a hearing was set. Thereafter, on December 13, 1977, the Bankruptcy Judge awarded $115.00 as compensation. The Bankruptcy Judge incorporated into the December 13, 1977 memorandum a letter written by the Judge on August 22, 1977 which states in relevant part:
Mr. Allen did not represent the bankrupt when the case was filed (January 16, 1976). He entered his appearance, as bankrupt's counsel on March 5, 1976, after the first meeting of creditors had convened and after a trustee in bankruptcy had been appointed.
Soon thereafter, Mr. Allen assisted in the preparation of amended schedule B, previously ordered by the court. Such amended schedules were ordered because the schedules originally filed were deficient, in failing to accurately disclose the kind and character of the bankrupt's assets at bankruptcy.
Ordinarily, and generally, assistance in the preparation of property schedules is compensable service. I do not, however, permit payment for such services out of a bankruptcy estate where the filing of amended property schedules is occasioned by bankrupt's derelictions at the outset. Mr. Allen's logged time reflects that he attended, with the bankrupt, a reconvened creditors' meeting, held March 22, 1976. The court's minutes so reflect. However, bankrupt was ordered to return primarily (1) to bring certain (Homesteaders) life insurance policies which he owned but which had not been described in the property schedules nor produced at the first meeting of creditors; and (2) in respect of the facts and circumstances surrounding bankrupt's purchase of the tractor financed through Cass Bank, and in respect of compensation due the bankrupt if any, for loads hauled in somewhat close proximity to bankrupt [sic] . .. Here, again, bankrupt's presence was required in part because of his failure to rightly disclose his interest in the insurance policy. I would not compensate his counsel for his presence at the continued creditors' meeting if the examination had been relegated to insurance. However, other matters were the subject of bankrupt's examination, and Mr. Allen's attendance is a compensable service.
. . . . .
Most of the remaining logged time was spent by Mr. Allen in negotiating with the trustee in respect to bankrupt's accountability to the trustee for wages earned but not received at bankruptcy and other properties, necessitating his ascertaining the true extent of those properties. . . .
To the extent that the parties were able to compromise their differences without resort to contested proceedings, the cost to this estate, in trustee's attorney's fees, is less than if such contested proceedings had been necessary. At the same time Mr. Allen was resolving those differences *198 for his client, not to benefit the estate; and at a lesser cost. I do not find that such services were "beneficial to the estate" so as to be compensable.
The Bankruptcy Judge noted in his December 13, 1977 memorandum opinion that:
The exhibits reflect that a considerable portion of Mr. Allen's logged time was spent in preparing an amended Schedule B for filing on behalf of the bankrupt. A comparison of the Amended Schedule B, so filed, with the Schedule B originally filed reflects that the Schedule B originally filed was at least dreadfully inaccurate and, at most, fraudulently false. There is an intimation in the exhibits that the inaccuracy was the result of bankrupt's original counsel's inadequacy, which included the filing of the bankruptcy papers some 4 months subsequent to the time they were prepared. Even if so, it is the duty of the bankrupt, primarily, to file schedules which truthfully state his assets, and debts, at bankruptcy. Further, the failure to schedule the life insurance policies in the Schedule B originally filed can scarcely be attributed to the delay in filing.
The bankruptcy estate ought not to be burdened by an allowance for the filing of such amended Schedules, in my judgment, even though successor counsel, as Mr. Allen, is employed to do the work. Lawyers, and their bankruptcy clients, must know that bankruptcy schedules are something more than nonrelevant pieces of paper which are filed merely as a condition of bankruptcy relief and as a procedure to invoke the status of the Bankruptcy Rules (401 and 601) so as to have creditors called off their quests of collection: they are required to be viable instruments which are calculated to aid the Court, and its officer, the bankruptcy trustee, in an honest administration of the case.
. . . . .
One thing further: the original Schedule B-4 does not claim upon it any items of property, as exempt property with substantive value. Mr. Allen's preparation of the amended Schedule B afforded bankrupt to amend the Schedule B-4, to claim full exemptions for the bankrupt, . . . And, amended Schedule B-4 was utilized by the bankruptcy trustee as a viable instrument, as a result of which bankrupt was allowed substantial exemptions . . .
Under these circumstances, I cannot find, and do not find, that the services rendered, in the preparation and filing of the amended Schedule B, are compensable services. The primary beneficiary of those services is the bankrupt, and he must pay for them outside the assets of this estate.
Most of the remainder of the services logged by Mr. Allen relate to negotiating with the trustee concerning the trustee's various claim to (what he thought to be be) non-exempt property not ultimately administered upon: household furniture and appliances; compensation received by the bankrupt for a truck run concluded after bankruptcy, etc. The negotiations were ultimately concluded, by the trustee's acceptance of bankrupt's offer of compromise which, basically acceded to bankrupt's contentions (made through Mr. Allen).
. . . . .
. . . Mr. Allen's efforts were devoted to serving his client . . ..
The thrust of appellant's argument herein is that his actions served to bring order to the chaos that existed prior to his entry into the proceeding. He also notes that the amended Schedule B that he filed was not in response to an order of the Bankruptcy Court. The prior attorney had filed an amended schedule pursuant to the Court order while appellant filed a second amended schedule because of deficiencies in the prior schedules.
On an appeal from a decision of the Bankruptcy Court, the standards of review employed are whether the findings are clearly erroneous, whether there is plain error, or whether there has been an abuse of discretion. In re Gowen, 328 F.Supp. 789 *199 (E.D.Mo.1971); In re Ken Boatman, 359 F.Supp. 1062 (W.D.La.1973), aff'd, 504 F.2d 924 (5th Cir. 1974); In re S. P. Nelson & Sons, Inc., 426 F.2d 235 (6th Cir. 1969), cert. denied, 397 U.S. 1038, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970). The standard to be employed in reviewing an award of attorney's fees is abuse of discretion. In re Haldeman Pipe & Supply Company, 417 F.2d 1302 (9th Cir. 1969).
In Conrad v. Pender, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933), the Court held that an attorney may be awarded fees payable out of the estate where the services were "rendered in aid of the administration of the estate and the carrying out of the provisions of the act". Id. at 476, 53 S.Ct. at 704. In determining the amount of compensation, "[e]conomy is . . . the guiding principle". 3A Collier on Bankruptcy ¶ 62.31 at p. 1612. Compensation is limited to services involving the performance of "legal duties rather than . . . [the exercise of] legal privileges". Id. at 1599. The determination that the services were or were not rendered in aid of the administration of the estate lies within the discretion of the Bankruptcy Court, id. at 1605, and appellant bears the burden of establishing abuse of discretion. Martin v. Mercantile Financial Corporation, 404 F.2d 886 (5th Cir. 1968).
After careful consideration, it is the Court's conclusion that appellant has failed to establish abuse of discretion and that therefore the award should not be changed. Accordingly, the decision of the Bankruptcy Court will be affirmed.