40 F.3d 1059
 32 Collier Bankr.Cas.2d 515, Bankr. L. Rep. P 76,207
In re OCCIDENTAL FINANCIAL GROUP, INC.; Occidental Land
Research, Debtors.
The LAW OFFICES OF IVAN W. HALPERIN, Plaintiff-Appellant,
v.
OCCIDENTAL FINANCIAL GROUP, INC.; Occidental Land Research,
Defendants-Appellees.
 No. 92-56002.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1994.
Decided Nov. 25, 1994.
 
 Ivan W. Halperin, Hedy Zhang, Sean Butler, The Law Offices of Ivan W. Halperin, Los Angeles, CA, for appellant.
 Stephen R. Wade, Covington & Crowe, Ontario, CA, for appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: BROWNING, FERGUSON and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 We affirm a bankruptcy court disgorgement order directed to an attorney.
 
 I. FACTS
 
 2
 On April 25, 1991, John and William Decker retained The Law Offices of Ivan Halperin to represent themselves and several firms they controlled. The purpose of Halperin's representation of the Deckers, as stated in their retainer agreement, was:
 
 
 3
 To review and analyze the financial and legal affairs of the Clients, to recommend a course of action which may include the reorganization of the financial affairs of any one or more of the Clients, the preparation, filing, serving and prosecution of such actions as the Clients may authorize.
 
 
 4
 The clients advanced $140,000 to Mr. Halperin in accordance with the retainer agreement.
 
 
 5
 On May 30, Mr. Halperin filed Chapter 11 bankruptcy petitions for two of the Deckers' firms, the Occidental partnership and corporation. He did not at that time file an application for his law offices to be employed by the debtors in bankruptcy. Mr. Halperin did not file the application for retroactive employment until January 9, 1992, over seven months after filing for bankruptcy.
 
 
 6
 The application included the conflict of interest statement required by Bankruptcy Rule 2014(a). Under penalty of perjury, Halperin declared:
 
 
 7
 [T]o the best of my knowledge neither I nor any member [of] the Offices of Ivan W. Halperin:
 
 
 8
 a. has any previous connection with the Debtor, its creditors or any other parties in interest in this matter or their respective attorneys.
 
 
 9
 b. has represented or hold or have represented or held any interest adverse to the Debtor in connection with the matter upon which I and the Offices are to be engaged.
 
 
 10
 (E.R. 36-37)
 
 
 11
 This statement was not correct. Mr. Halperin had represented and still represented the Deckers. The Deckers had substantial creditors' claims against their Occidental firms, and as officers, directors, and partners, could conceivably have liabilities to those firms as well.
 
 
 12
 The creditors' committee opposed the application and sought disgorgement of the $140,000 paid to the Halperin law firm. The judge ordered disgorgement, and the Halperin law office appeals. The appeal does not put at issue denial of Halperin's application for retroactive employment. It challenges only the disgorgement order.
 
 II. ANALYSIS
 
 13
 We have jurisdiction to review final orders regarding claims arising under Chapter 11 of the Bankruptcy Code. 28 U.S.C. Secs. 158(d), 1291.
 
 A. NOTICE
 
 14
 Halperin argues that the disgorgement order was issued without adequate notice because the creditors' opposition requesting it was not timely served, and his office did not receive fair notice. But he caused his application for retroactive compensation to be noticed up on shortened time. The order required service of the opposition by January 29, and the opposition was served on that date. Halperin complains that the opposition was not received until the next day, but this argument is frivolous. Service required only that the opposition be sent by the deadline. Fed.R.Bankr.P. 9006(e); In re Victoria Station Inc., 840 F.2d 682, 684 (9th Cir.1988).
 
 
 15
 Halperin makes a more appealing argument as well. He was out of the office, quite ill with adult chicken pox, when the opposition was due. His associate requested that opposing counsel fax the opposition to his office so it could be shown to Mr. Halperin prior to the hearing, set for two days after the due date. They express mailed it instead, depriving him of this much-needed day.
 
 
 16
 The order cannot be vacated because of this incivility, though, for two reasons. First, when Mr. Halperin's associate went to court, she did not ask for any delay or subsequent opportunity for Mr. Halperin to be heard, so the bankruptcy judge had no reason to delay. She asked only that the opposition be disregarded as not timely served, a remedy to which the Halperin law firm was not entitled. Second, no legal entitlement to service by fax has been demonstrated. Counsel for the creditors may be justly punished by Mr. Halperin and other lawyers by being held strictly to the rules in the future, but no rules were violated, so no remedy for violation can be imposed. The Halperin law firm had a day's notice of the opposition, and asked the judge for no more time to respond.
 
 B. DISGORGEMENT
 
 17
 Halperin argues that the disgorgement order was erroneous because his services benefitted the bankruptcy estate, and some of the services were rendered before the petition was filed. His challenges are to the equity of requiring disgorgement of prepetition fees. He does not argue that the fees were reasonable in amount and therefore not subject to disgorgement.
 
 
 18
 "Because this court is in as good a position as the district court to review the decision of the bankruptcy court, we review the bankruptcy court's decision independently." In re Kennerley, 995 F.2d 145, 146 (9th Cir.1993). We will not disturb a bankruptcy court's attorney fee determination absent an abuse of discretion or erroneous application of the law. In re Riverside-Linden Inv. Co., 945 F.2d 320, 322 (9th Cir.1991).
 
 
 19
 Mr. Halperin argues that he should not be penalized for his conflict of interest, because the debtor requested his services and the court and creditors knew he was representing the debtors. What the court and creditors could not discover from Mr. Halperin's application was that Mr. Halperin had an undisclosed conflict of interest. The creditors had an interest in whether the lawyer for the Occidental firms might be representing them in such a manner as to protect the claims and assets of their principals, the Deckers. Halperin's application for fees denied that he had represented any interest adverse to the Occidental companies, but he had and did.
 
 
 20
 A bankruptcy court may sometimes exercise discretion to make an award for attorneys fees not authorized in advance, but only in exceptional circumstances where the attorney provides a satisfactory explanation for failure to obtain approval in advance and demonstrates that the service significantly benefitted the estate. In re THC Fin. Corp., 837 F.2d 389, 392 (9th Cir.1988). Halperin did not satisfy either branch of this test.
 
 
 21
 Although he argues that getting Occidental's books in order and proceeding with the bankruptcy benefitted Occidental, his retainer agreement obligated him to serve the Deckers' interest. While we do not rule out the possibility that there might be a case in which an undisclosed conflict of interest would not preclude a demonstration that the attorney's services benefitted the bankruptcy estate, Halperin has not demonstrated that this is such a case. He gave the bankruptcy court no reason to doubt that he served the Deckers at the expense of the Occidental firms and arranged all the proceedings mainly to benefit the Deckers. E.g., In re Kendavis Indus. Int'l, Inc., 91 B.R. 742, 747-48 (Bankr.N.D.Tex.1988). That is the significance of the nondisclosure. Had he disclosed the conflict of interest, the bankruptcy court and creditors would have been alerted to this possibility. Mr. Halperin's conflict of interest was plain and substantial. The creditors would take the assets of the Occidental firms. The Deckers' interest was in keeping as much for themselves as possible in the way of assets while preserving their creditors' claims against the Occidental firms. It was both consistent with his duty under the retainer agreement and likely as a practical matter that Mr. Halperin would best serve the Deckers' interests, and he has not demonstrated any inequity in requiring disgorgement of the retainer paid out of the Occidental firms' assets. Mr. Halperin also failed adequately to explain the more than seven-month delay in filing his application for employment.
 
 
 22
 Nor did Halperin demonstrate that the bankruptcy court abused its discretion by requiring disgorgement of fees for his prepetition services as well as his post-petition services. Section 329 of the Bankruptcy Code authorizes the bankruptcy court in appropriate circumstances to "order the return" of any fees paid to an attorney "in connection with" a bankruptcy case within a year "before the date of filing the petition." 11 U.S.C. Sec. 329. That is a statutory authorization for the bankruptcy court to order disgorgement, in proper circumstances, of fees paid for prepetition services. See Conrad v. Pender, 289 U.S. 472, 477, 53 S.Ct. 703, 704, 77 L.Ed. 1327 (1933) (explaining purpose of predecessor statute).
 
 
 23
 Halperin represented to the bankruptcy court that he had no previous connection to the debtor. He provided an interim bill for $176,000, reduced to $140,000 in the final bill. These fees were characterized as strikingly high in the colloquy with counsel in bankruptcy court. The claimed $40,000 prepetition fee portion charged for services rendered between April 25 and May 29 is quite substantial. Halperin's undisclosed conflict of interest and failure to disclose his representation of the Deckers deprived him of any equitable claim to a retention of the fees for prepetition services. In re Maui 14K, Ltd., 133 B.R. 657, 659-61 (Bankr.D.Haw.1991); In re Plaza Hotel Corp., 111 B.R. 882, 883-84 (Bankr.E.D.Cal.1990). He did not come to equity with clean hands. Henry L. McClintock, Principles of Equity 59-69 (2d ed. 1948).
 
 C. QUANTUM MERUIT
 
 24
 Halperin also argues for a quantum meruit award of those attorney fees barred as a matter of law by his failure to obtain prior court approval. As a general rule the equitable remedy of quantum meruit cannot be available where the fees are barred by law under the bankruptcy rules. In re Shirley, 134 B.R. 940, 944-45 (9th Cir. BAP 1992) (noting that allowing attorney to recover under quantum meruit and other state law theories would void bankruptcy code and rules requiring court approval of employment). Halperin is in no position to claim an exception to this rule, if there is one, because of his unclean hands, that is, his nondisclosure of his material and substantial conflict of interests.
 
 
 25
 AFFIRMED.