**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0374n.06**
**Filed: May 10, 2005**

**No. 04-5330**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

In Re: TRIPLE S RESTAURANTS, INC., )
)
Debtor. )
)
J. BAXTER SCHILLING, Trustee, )
)
Plaintiff-Appellant, )
) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR THE
) WESTERN DISTRICT OF KENTUCKY
DONALD M. HEAVRIN, )
)
Defendant-Appellee. )

Before: DAUGHTREY and CLAY, Circuit Judges, and GRAHAM,[*] District Judge.

**PER CURIAM.** In this Chapter 7 bankruptcy case, a parallel proceeding to *Schilling v. Harrod Trust*, No. 04-5194, the bankruptcy trustee appeals the district court's reversal of the bankruptcy court's order to disgorge part of the fees collected by Donald Heavrin, general counsel for the debtor. Pursuant to a retainer agreement, Triple S paid Heavrin $10,000 per month to make his legal services available. During the year preceding Triple S's Chapter 11 petition, most of Heavrin's legal work involved renegotiating finance agreements and defending law suits in an effort to bolster the financial stability of the

---

[*]The Hon. James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

corporation. After Triple S filed for bankruptcy protection, Heavrin did not submit a statement of fees paid to him or an accounting of the time he worked for the debtor, as required by the Federal Bankruptcy Rules. Instead, a statement reflecting the payments to Heavrin was submitted by the corporation's bankruptcy attorney as part of an accounting of payments to insiders. The trustee then initiated this adversary proceeding to recover all fees paid to Heavrin by Triple S. The bankruptcy court twice ordered all of the legal fees disgorged, and the district court affirmed the order both times, subject to specific evidentiary findings. After an evidentiary hearing, the bankruptcy court entered a third judgment, but this one substantially reduced the amount of the recovery to the trustee. This order was reversed by the district court, based on its reversal of its own prior determination that the services rendered by Heavrin were performed in connection with the bankruptcy petition. The bankruptcy trustee now appeals the district court's order. Because we conclude that the bankruptcy court's final determination did not involve an abuse of discretion, we vacate the district court's judgment and reinstate that of the bankruptcy judge.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time that the bankruptcy proceedings in this case began, defendant Donald Heavrin was acting as general counsel for the debtor, Triple S Restaurants, a closely-held corporation in which his step-father, Robert Harrod, was a 50 percent shareholder. In 1987, Heavrin had filed the incorporation papers for Triple S and, initially, he billed his legal

work for Triple S at the rate of $125 per hour, a $25 discount from his standard rate. From 1988 through August of 1992, the defendant sent monthly bills to Triple S. Other than the period of incorporation, the invoices were never for more than $2,000.00. With each invoice, Heavrin submitted a statement of the nature of the work he had performed and the time spent on it. However, he did not retain the time sheets that he used to prepare these statements.

In August 1992, Harrod and the other Triple S shareholder, Michael MacAtee, met with Heavrin and told him that Triple S was in dire financial straits. They believed that it was necessary for the corporation to file for Chapter 11 protection that same day. The defendant made a cursory review of Triple S's recent financial statements and determined that "they were in a cash flow crunch." He dissuaded Harrod and MacAtee from filing a bankruptcy petition immediately and, instead, undertook to renegotiate the terms of the corporation's debt service and reduce the monthly payments. According to the defendant, between August and December 1992, he negotiated arrangements with Triple S's creditors that apparently enabled the corporation again to experience a positive cash flow.

Heavrin billed the corporation approximately $30,000 for the time spent conducting these negotiations with creditors. Harrod told him that Triple S was not in a financial position to pay that amount and proposed instead that Triple S enter into a retainer agreement with Heavrin, paying him $10,000 per month for 36 months to be available to the corporation for legal representation in those jurisdictions where Heavrin was admitted

(Kentucky and Indiana). In this way, Harrod proposed, Heavrin would recoup the outstanding $30,000 within three months and then would have a "heck of a deal."

Heavrin agreed and drafted the retainer agreement, which did not obligate Heavrin to do anything specific but merely recited the term of the agreement and the amount of the monthly payment. MacAtee, Harrod, and Heavrin signed the agreement on December 4, 1992, and the payments began in January 1993. Throughout the next 20 months, Heavrin engaged in litigation on behalf of Triple S. Most of these cases were initiated by creditors seeking payment. For example, Bell Atlantic, AEI Fund Management, Inc., Sizzler Restaurant International, Inc., Sysco, and McDonnell Douglas Finance Corporation all discussed and prepared or filed legal action against Triple S for unpaid debts.

Ultimately, any benefits from Heavrin's negotiations with Triple S's creditors did not last, and the corporation was forced to file a Chapter 11 reorganization petition on September 30, 1994. The case was converted by order to a Chapter 7 liquidation proceeding on December 13, 1994. The bankruptcy attorney for Triple S submitted a schedule of "Payments to Insiders" showing that in the year preceding the filing of the Chapter 11 petition, Triple S had paid Heavrin $153,177.71.

In 1996, the bankruptcy trustee initiated an adversary proceeding seeking to force Heavrin to disgorge all fees paid by Triple S pursuant to the retainer agreement. On March 11, 1998, Judge Roberts of the bankruptcy court determined that the services that Heavrin had provided to Triple S were covered by Section 329 of the Bankruptcy Code and,

therefore, that Heavrin was obligated to file a statement pursuant to Bankruptcy Rule 2016. Because he had not filed an accounting, the judge ordered him to pay $153, 477.71, the amount he received in the year preceding the filing of the bankruptcy petition, to the estate. Heavrin appealed the judgment, and the district court found that the fees had been paid "in contemplation of" the filing of the bankruptcy petition. However, the district court judge ruled that our opinion in *In re Downs*, 103 F.3d 472 (6th Cir. 1996), did not automatically require the disgorgement of all fees paid in the year prior to the filing of the Chapter 11 petition for failure to submit a Section 329 statement. Instead, the court held that *Downs* required complete disgorgement only in cases of "callous disregard" of fiduciary duties, and it therefore remanded the case to the bankruptcy court for factual findings on whether Heavrin's conduct met this standard.

On remand, the bankruptcy court reviewed the evidence in the record and found that Heavrin had, in fact, shown a callous disregard for his fiduciary duties. The judge noted, for example, that "Heavrin . . . attempted to paint himself as an attorney without any comprehension of the Bankruptcy Code, even though he has practiced [in bankruptcy court] on several occasions." The judge also found that in addition to Heavrin's failure to file a statement of the fees he himself received from Triple S, he had failed to submit statements of several fee-sharing arrangements in which he participated in rendering legal service to Triple S, also a violation of Rule 2016. Further, although Heavrin produced checks paid to other attorneys as evidence that he did not retain all of the moneys Triple S paid to him, these checks did not reference Triple S or give any indication what legal

work was performed in exchange for payment. Based on these findings, the judge again ordered complete disgorgement of the fees paid to Heavrin in the pre-petition year.

On appeal, the district court remanded the case a second time, again for additional fact finding. Specifically, the court stated that it was "concerned that the Bankruptcy Court would reach conclusions as to Heavrin's intentions and motives without holding an evidentiary hearing." The court articulated the question on remand as "not whether the amounts paid to Heavrin were proper . . . [but] whether the payments (whether excessive or not) were properly disclosed and, if not, whether the failure to do so amounted to a 'callous disregard.'"

During the pendency of the second appeal, the original bankruptcy judge recused himself from the case, and on remand it was assigned to another judge, who conducted an evidentiary hearing and heard testimony from witnesses including Heavrin, his wife, Innes Mather (Triple S's accountant), and David Chinn (Triple S's bankruptcy counsel). Like the original bankruptcy judge and the district judge, the newly assigned bankruptcy judge found that the services Heavrin rendered were in contemplation of the filing of the bankruptcy petition and, therefore, that he was obligated to submit a Section 329 statement. However, based on Chinn's testimony that he himself had filed a Section 329 statement and had not advised Heavrin to do so because he believed that the fees were more appropriately disclosed on a statement of payments to insiders, the bankruptcy court was unable to find

that Heavrin had engaged in a callous disregard of his fiduciary duties. The court went on to rule that:

> [T]he purpose of the disclosure requirements [] is to protect both creditors and the debtor from overreaching by attorneys. Based on the facts and circumstances of this case, the Court must sanction the Defendant to deter noncompliance with the Code and Rules by attorneys and to further the objectives of these statutory provisions. The Court, in exercising its discretion, must likewise sanction Defendant for his failure to comply with the full disclosure requirements, including his failure to maintian records of the time spent on matters pertaining to the debtor.
>
> In this case, Defendant has steadfastly refused to amend or supplement the record with his fee arrangement with the Debtor, even after the United States District Court concluded that Defendant was required to file a fee disclosure statement. . . . Despite Defendant's puzzling failure to disclose the fees received or adequately document his time, the Court acknowledges that the Defendant provided substantial services during the year preceding the bankruptcy and recognizes his efforts merit compensation.

Based on these findings, the judge ordered the defendant to disgorge $46,043.32 in fees.

On appeal, the district court – after having twice affirmed the bankruptcy court's findings regarding the nature of Heavrin's services in relation to the bankruptcy petition and the corollary obligation to file a Section 329 statement – reversed the new order and its own prior rulings. The court found that "numerous mistakes and misconceptions seem to have invested the arguments on [whether the payment should be disgorged]." The court went on to rule that "Section 329 applies only to attorneys for the debtor and does not apply to counsel generally who provided services for a corporation prior to bankruptcy. . . . [T]he

words seem so clear that the Court is uncertain how one could state a view so confidently to the contrary." Finally, the district judge backed away from his earlier agreement with the bankruptcy court ruling by stating that he did not "intend to determine that Heavrin's services for the year preceding the bankruptcy were 'in connection with the bankruptcy.'" The trustee now appeals the district court's ruling.

## DISCUSSION

In this appeal, we are required to make two straight-forward inquiries. The first is factual and pertains to the work that Heavrin performed for Triple S under the retainer agreement in the year leading up to the corporation's filing its Chapter 11 petition. The second is whether the bankruptcy court abused its discretion in its order for partial disgorgement of fees.

Section 329(a) of the Bankruptcy code provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, *for services* rendered or to be rendered *in contemplation of* or in connection with *the case* by such attorney, and the source of such contemplation.

(Emphasis added.) Bankruptcy Rule 2016(b) parallels Section 329, requiring that "[e]very attorney for a debtor . . . shall file with the court . . . the statement required by § 329 of the

Code which shall also set forth whether the attorney has shared or agreed to share the compensation with any other person."

Although the cases interpreting the term "in contemplation of" are relatively few in number, the law is well-settled, dating back to *Tripp v. Mitschrich*, 211 F. 424 (8th Cir. 1914). There, the Eighth Circuit considered a claim by a bankruptcy trustee to recover fees paid by the debtor to an attorney retained pre-petition on a contingency basis to pursue a settlement with insurance companies. Five days after the contract, creditors filed a bankruptcy petition against the debtor. During the bankruptcy proceeding, the attorney settled the case with the insurers and delivered the settlement amount to the debtor, keeping his agreed 30-percent contingency fee. The trustee sought to recover this sum. The court examined Section 60d of the Bankruptcy Act, the predecessor to Section 329, and determined that:

> The words 'in contemplation of bankruptcy' refer to the state of mind of the debtor, not of the attorney. . . Contemplation thus means more than the knowledge that a bankruptcy proceeding . . . is impending. It means that in making the transfer the debtor is influenced by the possibility or imminence of such a proceeding. There must be some relation as of cause and effect between knowledge of his condition and the transfer. . . . In a case under section 60d the debtor must of course be confronted with the possibility of a bankruptcy proceeding. But there must be more. There must be a transfer induced at least to some extent by such a situation.

*Mitschrich*, 211 F. at 426. The court determined that the debtor's agreement with the attorney was induced by his need for assistance in obtaining the benefit under his property insurance contract, not "in contemplation of" the impending bankruptcy.

Some 20 years later, the Supreme Court considered the same phrase in *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472 (1933). There, attorneys challenged a bankruptcy court's jurisdiction to review under Section 60d a payment to the debtor made to them 12 days before filing a bankruptcy petition. The debtor had made the payment to retain the attorneys to assist another lawyer, who had already been hired, in negotiating a settlement with creditors. The Court held that "the controlling question is with respect to the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction." 289 U.S. at 477. The Court noted that "negotiations to prevent bankruptcy may demonstrate that the thought of bankruptcy was the impelling cause of payment. A man is usually very much in contemplation of a result which he employs counsel to avoid." 289 U.S. at 479 (internal quotes omitted).

In this appeal, the legal services at issue were rendered under a retainer agreement, the terms of which required that Triple S would pay Heavrin $10,000 each month for his unlimited availability. In the year leading up to the filing of the Triple S bankruptcy petition, a substantial portion of the legal service Heavrin rendered to Triple S was defending the encroaching claims of creditors to "keep [the company] out of Chapter 11." Triple S, as debtor and client, was very much in contemplation of the result that it directed counsel to avoid. Thus, the fees paid were for services rendered in contemplation of a bankruptcy case.

Once it is established that the fees Triple S paid to Heavrin were for services in contemplation of the filing of a bankruptcy petition, it follows that Heavrin had a fiduciary duty to file a Section 329 statement. *See Downs*, 103 F.3d at 477 ("Under this provision . . . an attorney must disclose any fee arrangements made within . . . a year of filing the petition."). The next question, then, is whether the order of the bankruptcy court was appropriate. More precisely, we must determine whether the bankruptcy judge abused his discretion by ordering a partial disgorgement of the fees. We "will find an abuse of discretion only upon 'a definite and firm conviction that the [lower] court committed a clear error in judgment.'" *In re Kisseberth*, 273 F.3d 714, 721 (6th Cir. 2001) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). We find no such error here.

"Bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and the Rules . . . . Disgorgement may be proper even though the failure to disclose resulted . . . from negligence or inadvertence." 273 F.3d at 721. The original bankruptcy judge assigned to this case twice found, and the district judge twice agreed, that Heavrin rendered services in contemplation of the petition and failed to file a Section 329 statement. The bankruptcy judge further found several more instances where Heavrin failed to fulfill his fiduciary duty by not complying with the Code's requirement to report fee sharing arrangements or offering detailed reports of his time spent representing Triple S in the year pre-petition. Nevertheless, the bankruptcy judge later assigned to the case reduced the amount that Heavrin was ordered to disgorge by more than two-thirds, out of recognition that "his efforts

merit compensation," a determination that enabled Heavrin to keep almost all of the fees paid to him under the retainer agreement in the pre-petition year. The bankruptcy judge required partial disgorgement, however, in order to uphold the provisions of the Bankruptcy Code and encourage compliance with its requirements. Although we conclude that the final order was, if anything, unduly generous to Heavrin, we cannot say that it constituted an abuse of discretion.

## CONCLUSION

Because Triple S paid fees to Heavrin for services in contemplation of bankruptcy, which Heavrin was required to report to the bankruptcy court under Section 329 but did not, and because there was no clear error in connection with the bankruptcy court's order for partial disgorgement, we VACATE the judgment of the district court and REINSTATE that of the bankruptcy court.