**In the Matter of NU–PROCESS INDUSTRIES, INCORPORATED, a Michigan corporation, Debtor.**

**Bankruptcy No. 80–06219–B.**

United States Bankruptcy Court, E. D. Michigan.

July 24, 1981.

Rice, Rice & Gilbert by Stuart J. Rice, Detroit, Mich., for debtor.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

On October 27, 1980, Nu-Process Industries, Incorporated, a Michigan corporation, filed a petition in bankruptcy. The debtor's attorney filed a disclosure statement indicating that he received a fee of $3,500.00 from the debtor for the services rendered for this proceeding.[1] The court on its own motion, pursuant to section 329(b) of the Bankruptcy Code, scheduled a hearing to determine the reasonableness of this pre-petition fee.

1. This disclosure was made pursuant to section 329(a), which requires an attorney to file with the court a statement of the compensation paid or agreed to be paid for services rendered or to be rendered in contemplation of filing a bankruptcy proceeding.

2. Section 60d of the Bankruptcy Act provides as follows:
   "If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by trustee for the benefit of the estate."

Section 329(b), derived from section 60(d) of the Bankruptcy Act[2] and Bankruptcy Rule 220,[3] provides that the court may examine into the reasonableness of compensation paid by a debtor to an attorney for services rendered or to be rendered in contemplation of filing a bankruptcy proceeding and may order the return of any part of that payment to the extent it is excessive. "It matters very little to a bankrupt whether his attorney fee is large or small, since it will be paid out of the assets which, in any event, would normally be consumed in distribution." House Report to May 8, 1963, amendment to section 60(d). In this context, the need for judicial scrutiny of legal fees paid to an attorney for a debtor contemplating bankruptcy, becomes self-evident. *Conrad v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933); *In re Wood and Henderson*, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (1908); *In re Louisiana Loan and Thrift Corporation*, 416 F.2d 898 (5th Cir. 1969); *In re Buchanan*, 66 F.2d 416 (2nd Cir. 1933); *In re David Bell Scarves, Inc.*, 61 F.2d 771 (2nd Cir. 1932); *In re Klein-Moffett Co.*, 27 F.2d 444 (1928); *In re Stolp, et al.*, 199 F. 488 (D.C.Wis.1912); *In re Cybern Education, Inc.*, 378 F.Supp. 835 (N.D.Ill.1974); *In the Matter of Knickerbocker Leather & Novelty Co., Inc.*, 158 F.Supp. 236 (S.D.N.Y.1958); *In the Matter of Alexis J. Guy*, 2 B.C.D. 1474 (Minn.1976).

The only question, therefore, is whether the services rendered by counsel

Section 60d permitted the court to re-examine the reasonableness of fees on its own motion in recognition that "lawyers are frequently reluctant to challenge the fees charged by their colleagues."
In the instant case, not only did the trustee not institute any action challenging the fee received by counsel but, in fact, testified that it was reasonable.

3. Bankruptcy Rule 220(a) provides as follows:
   "On motion by any party in interest or on the court's own initiative, the court may examine any payment of money or any transfer of property by the bankrupt, made directly or indirectly and in contemplation of the filing of a petition by or against him, to an attorney for services rendered or to be rendered."

justify the compensation exacted. An attorney for the debtor is entitled to compensation for analyzing the debtor's financial condition; rendering advice and assistance to the debtor in determining whether to file a petition in bankruptcy; the actual preparation and filing of the petition, schedules of assets and liabilities, and the statement of affairs; and representing the debtor at the 341 meeting of creditors. *In re Kross*, 96 F. 816 (S.D.N.Y.1899). However, there is a consensus of opinion "that the work involved is often largely clerical or more in the nature of an accountant's work and warrants but a small fee for covering the true professional services." 3A Collier on Bankr., ¶ 62.31, at p. 1604 (14th ed. 1978). Allowable compensation for such services normally range from between $350.00 and $450.00.[4] *In re Hill*, 5 B.R. 541, 6 B.C.D. 917 (Bkrtcy.C.D.Cal.1980); *In re St. Pierre*, 4 B.R. 184, 6 B.C.D. 607 (Bkrtcy.D.R.I.1980); *In re Steeves*, 3 B.R. 334, 6 B.C.D. 215 (Bkrtcy.D.R.I.1980). The performance of such services for a business entity may present additional problems requiring additional legal services and an attorney, therefore, in such cases may justifiably charge a greater fee. *Tidewater Services, Inc. of Norfolk*, 2 B.C.D. 1236 (E.D.Va.1976); 3A Collier on Bankr., ¶ 62.31, at p. 1614 (14th ed. 1978). The compensation for whatever services are performed by the attorney is to be determined on a case-by-case basis.

 The time sheet submitted by counsel indicates he rendered approximately thirty-nine (39) hours of services in connection with the filing of the bankruptcy case. Of this time, fifteen (15) hours were spent in preparing the schedules for filing. The majority of the remaining time was spent in reviewing financial statements, meetings and telephone calls in an attempt to gather the information necessary to prepare the petition. Counsel apparently concedes that the time spent in the preparation and drafting of the schedules was inordinate, but

contends that the time was required because the records of the company were in disarray and it was necessary for him to spend this time to make sense of the books and records so that the necessary schedules could be filed. To post books and to derive information from them is the work of a clerk, bookkeeper or accountant. *In re Connell & Sons*, 120 F. 846 (M.D.Pa.1903). Counsel for the debtor is entitled to compensation only for legal services performed in connection with the filing of the petition. He is not to be compensated "at lawyer's rates for the work which a clerk or amanuensis can do cheaper, if not better." *In re Charles Ray Glass, Inc.*, 47 F.Supp. 428, 430 (S.D.Cal.1942). Cf. *In re Eureka Upholstering Company*, 48 F.2d 95 (2nd Cir. 1931).

Counsel for the debtor also contends that the fee is justified in part because he was required to prepare and file ten exhibits in connection with the bankruptcy petition. These exhibits consist of lists of creditors[5] and schedules of property of the debtor.[6] This is the basic clerical information that must be scheduled and the basic service that counsel is required to perform. This service does not justify the allowance of any extraordinary fee. Nor is an extraordinary fee justified by the fact that the services were competently performed. It is to be assumed that if an attorney undertakes a given assignment, that the assignment will be competently performed.

There are no unusual or complex problems present in this case. Counsel was merely faced with deciding whether to file a voluntary petition and when the decision was made to file a petition, to draft the schedules and statement of affairs, and to attend the 341 meeting of creditors. Taking into consideration the nature of the work performed and the size of the estate, it is the opinion of this court that a reasonable fee for such services is ONE THOUSAND FIVE HUNDRED AND 00/100

---

4. Legal clinics in this district charge as low as $150.00 for such services.

5. A list of creditors of the debtor is required to be listed in schedules A2 and 3.

6. Property of the debtor—real property and personal property—is required to be listed in schedules B1, 2 and 3.

DOLLARS ($1,500.00). Accordingly, any compensation received in excess of ONE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($1,500.00) is to be turned over to the trustee.