**In re Willis J. TALLEY,
Confirmed Debtor.**

**Bankruptcy No. 486–01860–LO–11.**

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Feb. 3, 1989.

James E. Mouton, Lafayette, La., for debtor.

Robert Brenham, Lafayette, La., for James E. Mouton.

### MEMORANDUM OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

This Opinion concludes that the confirmed Chapter 11 Debtor is entitled to the excessive fees paid by him to his attorney even though most classes of creditors under the confirmed plan are impaired when the creditors have failed to assert any

claim to these funds and the Chapter 11 Plan is now fully consummated.

In this case, many classes of secured creditors were "impaired", as that term is used in Bankruptcy Code Sec. 1124, and the Plan so stated. These creditors did not under the Plan provisions get what was owed to them pre-bankruptcy. What they got was surrender of depreciated collateral that would not be sufficient to satisfy indebtedness. This was permissible under the Bankruptcy Code because all impaired classes accepted the Plan. Had they not accepted the Plan, the Court would have been obliged by Sec. 1129(b)(1) to examine whether the Plan was fair and equitable and the Court could confirm only if the so-called "cramdown" requirements of Sec. 1129(b)(2) were met. These requirements would not have been met. Secured creditors did not receive deferred payments in cash equal, on a present value basis, to the allowed amounts of their claims. *See* Sec. 1129(b)(2)(A)(i). They essentially received depreciated property, not deferred payments. Nor did they realize "the indubitable equivalent" of their claims. *See* 11 U.S.C. § 1129(b)(2)(A)(iii). The Summary of Debts and Property filed by the Debtor showed that debts exceeded the value of property owned by a very substantial margin.

Immediately after plan confirmation, the Debtor's attorney, James E. Mouton, advised the confirmed Debtor, Mr. Talley, that his fee would be $92,500.00. This was over and above a $7,500.00 retainer earlier received. Mr. Talley paid Mr. Mouton the $92,500.00.

The unauthorized receipt of these funds came to light as a result of review, at the Court's request, by Estate Administrator Gregory DaGian of confirmed Chapter 11 cases to determine in which cases, if any, a final decree would be appropriate. Mr. DaGian noticed that Mr. Mouton had never submitted a final fee application. He contacted Mr. Mouton who then submitted an application in the amount of $92,500.00.

At a fee hearing on September 7, 1988, the Court determined that Mr. Mouton should be allowed compensation of $60,-250.00 and that the total compensation of $100,000.00 already received by Mr. Mouton exceeded this amount by $39,750.00. The Court by order of September 30, 1988, required Mr. Mouton to deposit $39,750.00 into the registry of the Court by October 15, 1988. It also invited the filing of comments by any interested party regarding the person or persons to whom this sum should be paid.

Mr. Mouton failed to comply with the Court's deposit order. On October 31, 1988, the Court ordered Mr. Mouton to show cause why he should not be found in civil contempt. The contempt hearing was set for November 30, 1988, to determine whether Mr. Mouton was able to comply with the Court's deposit order. However, on November 18, 1988, before the scheduled November 30 hearing, Mr. Mouton moved that the District Court withdraw this matter from the Bankruptcy Court. The Bankruptcy Court postponed the contempt hearing to allow the District Court sufficient time to consider the Motion for Withdrawal of Reference. After hearing testimony of Mr. Mouton and the confirmed Debtor, the Honorable Earl E. Veron of the District Court denied the Motion of Withdrawal of Reference and gave instructions that there be a hearing before the Bankruptcy Court.

At the civil contempt hearing on December 22, 1988, the financial evidence and the testimony of Mr. Mouton left no choice but for this Court to conclude in an oral decision that Mr. Mouton is indeed financially unable to provide the $39,750.00 earlier ordered. That money had been spent. Mr. Mouton had insufficient other funds and unencumbered assets to be able to pay the amount required. Accordingly, I found that Mr. Mouton was not in civil contempt of court. The purpose of civil contempt proceedings in this case was to coerce compliance with a court order. But a court cannot use the civil contempt power to require the impossible. By demonstrating inability to pay, Mr. Mouton has shown that his failure to deposit the money required was not contempt. *See 2 Collier on*

*Bankruptcy* Sec. 329.05 at 329–22 and 329–23 (15th ed. 1988).

While Mr. Mouton is not in civil contempt, there is no excuse or justification for his solicitation of funds from his client without Bankruptcy Court authorization or for his failure to advise his client that he could not receive funds without such authorization. Sec. 327 of the Bankruptcy Code provides for employment, with the court's approval, of attorneys and other professional persons. Sec. 330 provides for court determination of the amounts to be paid to a debtor's attorney as reasonable compensation for actual, necessary services rendered and for reimbursement of actual, necessary expenses. Sec. 331 allows compensation on a interim basis, but only with court approval, for a debtor's attorney during the course of a case. Bankruptcy Rule 2016 clearly provides that an "entity" (defined by Sec. 101(14)) to include a "person" seeking interim or final compensation for services, or reimbursement of necessary expenses "shall file" with the court a fee application.

Section 329 of the Bankruptcy Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

This provision is explained in legislative history of the Reform Act of 1978:

"This section, derived in large part from current Bankruptcy Act Sec. 60d, requires the debtor's attorney to file with the court a statement of the compensation paid or agreed to be paid to the attorney with the case, and the source of the compensation. Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

Subsection (b) permits the court to deny compensation to the attorney, to cancel an agreement to pay compensation, or to order the return of compensation paid, if the compensation exceeds the reasonable value of the services provided. The return of payments already made are generally to the trustee for the benefit of the estate. However, if the property would not have come into the estate in any event, the court will order it returned to the entity that made the payment."

H.R.Rept. No. 95–595, 95th Cong. 1st Sess. 329 (1977). S.Rept. No. 95–989, 95th Cong., 2d Sess. 39–40 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5825, 6285–6286.

The Court's power is so broad that it extends not only to compensation paid by the Debtor to his attorney, but compensation to the Debtor's attorney from any source. *See In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 572–73 (Bankr. M.D.Tex.1986).

In Chapter 11 cases, like this one, the Court's powers under Sec. 329 are still further emphasized by Sec. 1129(a)(4), which is an indispensable requirement for plan confirmation.

*"1129. Confirmation of plan*

(a) the Court shall confirm a plan only if all the following requirements are met:

\* \* \* \* \* \*

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by, or is subject to the approval of, the court as reasonable."

Section 1129(a)(4) is similar to and derived from Section 221(4) of the Bankruptcy Act of 1898. *Bankruptcy Reform Act of 1978*, H.Rept. 95–595, 95th Cong., 1st Sess. 126 and 412 (1977). No less an authority than the Supreme Court gave a very broad reading to Sec. 221(4)'s language referring to payments for services and expenses "in", "or in connection", and "incident to", all of which now appear in Code Sec. 1129(a)(4). *See Leiman v. Guttman*, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453 (1949). *See also, Brown v. Gerdes*, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944), and *Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941).

■ It is clear that the Bankruptcy Code, the Bankruptcy Rules and relevant case-law jurisprudence conferring broad powers over fees of debtors' attorneys regardless of the source of payment, are intended for protection of the debtors and all other participants in the bankruptcy process. A confirmed Chapter 11 plan is no excuse for solicitation of the payment of unauthorized fees. Both Sec. 329 and Sec. 1129(a)(4) contemplate that the court must review the fees and expenses of a successful Chapter 11 attorney.

■ As already noted, Sec. 329 empowers the court to order return of any payment exceeding the reasonable value of services, either to the estate under certain circumstances, or to the entity that made such payment. 11 U.S.C. 329(b)(1) and (2). In the present case, the confirmed Debtor made the payment to Mr. Mouton immediately after plan confirmation under which creditors absorbed substantial losses. However, no creditors have objected or made any claim to the excess compensation despite the Court's several invitations for them to do so. Although Mr. Talley at Mr. Mouton's request following this Court's deposit order submitted an affidavit stating that he felt Mr. Mouton's fee was reasonable, he did so without the benefit of attending the fee hearing or examining the transcript of that hearing. He later testified before District Judge Veron that he felt the fee was high and that he would like the excess refunded if Mr. Mouton were able to do so. The appropriate remedy upon finding an already paid fee unreasonable is either an order directing return of that money to the estate or to the entity that made payment, a money judgment, or a combination of both. *See* 3 *Collier on Bankruptcy* Sec. 329.04[2] at 329–19 (15th ed. 1988).

■ The cases dealing with such restitution, *see e.g. In the Matter of Chin*, 47 B.R. 894, 11 B.C.D. 1252 (S.D.N.Y.1984); *In re Richardson*, 14 B.R. 755 (Bankr.E.D.Pa. 1981); *In the Matter of Nu–Process Inds., Inc.*, 13 B.R. 136, 4 C.B.C.2d 1362, 7 B.C.D. 1227 (Bankr.E.D.Mich.1981), fail to provide guidance regarding who should receive such restitution when creditors' claims are not fully satisfied. Because of the lack of authority on this issue, and complex interplay between Sec. 329, Sec. 541, and Sec. 1141, and because no creditors have expressed any interest in the excess fees, the Court determines that Mr. Talley is entitled to them and that the best results will be achieved under the circumstances of this particular case by a money judgment in favor of Mr. Talley which would allow him to exercise the rights of a judgment creditor when and if he chooses to do so.

Accordingly, a judgment has been signed by me this date against James E. Mouton and in favor of Willis J. Talley.